104 Cal.Rptr.2d 738 (2001)
25 Cal.4th 76
18 P.3d 660
The PEOPLE, Plaintiff and Respondent, Robert Nelson ATKINS, Defendant and Appellant.
No. S082662.
Supreme Court of California.
March 12, 2001.
*740 Victor Blumenkrantz, Berkeley, under appointment by the Supreme Court, for Defendant and Appellant.
Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Robert R. Anderson, Assistant Attorney General, Mathew Chan, Carlos A. Martinez and Kelly E. LeBel, Deputy Attorneys General, for Plaintiff and Respondent.
Kent S. Scheidegger and Charles L. Hobson, for Criminal Justice Legal Foundation as Amicus Curiae on behalf of Plaintiff and Respondent.
*739 CHIN, J.
Is evidence of voluntary intoxication admissible, under Penal Code section 22, on the issue of whether defendant formed the required mental state for arson (Pen.Code, § 451)?[1] We conclude that such evidence is not admissible because arson is a general intent crime. Accordingly, we reverse the judgment of the Court of Appeal.

FACTS AND PROCEDURAL HISTORY
On September 26, 1997, defendant told his friends that he hated Orville Figgs and was going to burn down Figgs's house.
On the afternoon of September 27, defendant and his brother David drove by Figgs's home on the Ponderosa Sky Ranch. Defendant "flipped the bird" at Figgs as they passed by.
Later that day, around 5:00 p.m., a neighbor saw David drive a white pickup truck into the Ponderosa Sky Ranch canyon, but could not tell if he had a passenger. Around 9:00 p.m., the same neighbor saw the pickup truck drive out of the canyon at a high rate of speed. A half-hour later, a fire was reported. Shortly after 10:00 p.m., Figgs was awakened by a neighbor. Because the fire was rapidly approaching his house, Figgs set up a fire line. The fire came within 150 feet of his house.
At 9:00 or 9:30 p.m., one of defendant's friends saw defendant at David's apartment. He was angrily throwing things around. When asked if defendant was heavily intoxicated, the friend replied, "Yes. Agitated, very agitated."
The county fire marshall, Alan Carlson, responded to the fire around 1:30 a.m. and saw a large fire rapidly spreading in the canyon below the ranch. He described fire conditions on that night as "extreme." Both the weather and the vegetation were particularly dry. The wind was blowing from 12 to 27 miles per hour, with gusts up to 50 miles per hour. The canyon had heavy brush, trees, grass, and steep sloping grades. The fire could not be controlled for three days and burned an area from 2.5 to 2.8 miles long.
The fire marshall traced the origin of the fire to an approximately 10 foot-square area that was completely burned and smelled of "chainsaw mix," a combination of oil and gasoline. A soil sample taken from that area tested positive for gasoline. *741 About 40 feet away, the marshall found defendant's wallet, which was near a recently opened beer can, and tire tracks. He also found a disposable lighter nearby and two more beer cans in other parts of the canyon. All the cans had the same expiration date.
Several days later, defendant spoke with the fire marshall. After waiving his Miranda rights [Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694), defendant told the marshall that he and his brother had spent much of the day drinking. They then drove in David's white pickup to the Ponderosa Sky Ranch canyon, where they drank some more and stayed between three and one-half to five hours. Defendant saw that the area was in poor condition and decided to burn some of the weeds. His family had once lived there. He pulled out the weeds, placed them in a small pile in a cleared area, retrieved a plastic gasoline jug from David's truck, and from the jug poured "chainsaw mix" on the pile of weeds. Defendant put the jug down a few feet away and lit the pile of weeds with a disposable lighter. The fire quickly spread to the jug and got out of hand. He and David tried to put the fire out, unsuccessfully. They panicked and fled while the jug was still burning. Defendant told the marshal that he meant no harm, claimed the fire was an accident, but admitted that he and his family had hard feelings with the Figgs family.
The marshall testified that the fire had not been started in a cleared area. The area was covered with vegetation, and there was no evidence that the fire started accidentally during a debris burn or that someone had tried to put it out. The marshall opined that the fire was intentionally set.
An information charged defendant with arson of forest land. (§ 451, subd. (c).) The trial court instructed on arson (§ 451, subd. (c))[2] and on the lesser offenses of arson to property (§ 451, subd. (d)), unlawfully causing a fire of forest land (§ 452, subd. (c)), and misdemeanor (§ 452, subd. (d)) unlawfully causing a fire of property. It described arson and all lesser offenses as general intent crimes and further instructed that voluntary intoxication is not a defense to arson and the lesser crimes and does not relieve defendant of responsibility for the crime. The jury found defendant guilty as charged.
Defendant appealed, arguing that evidence of voluntary intoxication was admissible to show that he lacked the requisite mental state for arson. The Court of Appeal agreed. It reasoned that, as defined in its prior decisions of In re Stonewall F. (1989) 208 Cal.App.3d 1054, 256 Cal.Rptr. 578 (Stonewall F.) and People v. Fabris (1995) 31 Cal.App.4th 685, 37 Cal.Rptr.2d 667 (Fabris), the mens rea for arson is the intent to set fire to or burn or cause to be burned forest land, a specific mental state, as to which voluntary intoxication evidence is admissible under section 22, subdivision (b). The court reversed because the instruction that voluntary intoxication was not a defense to arson "denied defendant the opportunity to prove he lacked the required mental state."
We granted the People's petition for review on the issue of whether evidence of voluntary intoxication is admissible, under section 22, to negate the required mental state for arson.

*742 DISCUSSION
Section 22 provides, as relevant: "(a) No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his or her having been in that condition. Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states for the crimes charged, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act.
"(b) Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought."
Evidence of voluntary intoxication is inadmissible to negate the existence of general criminal intent. (People v. Whitfield (1994) 7 Cal.4th 437, 448, 27 Cal. Rptr.2d 858, 868 P.2d 272.) In People v. Hood (1969) 1 Cal.3d 444, 82 Cal.Rptr. 618, 462 P.2d 370 (Hood), we first addressed the question whether to designate a mental state as a general intent, to prohibit consideration of voluntary intoxication or a specific intent, to permit such consideration. There, we held that intoxication was relevant to negate the existence of a specific intent, but not a general intent, and that assault is a general intent crime for this purpose. (Id. at pp. 455-459, 82 Cal.Rptr. 618, 462 P.2d 370.) We stated:
"The distinction between specific and general intent crimes evolved as a judicial response to the problem of the intoxicated offender. That problem is to reconcile two competing theories of what is just in the treatment of those who commit crimes while intoxicated. On the one hand, the moral culpability of a drunken criminal is frequently less than that of a sober person effecting a like injury. On the other hand, it is commonly felt that a person who voluntarily gets drunk and while in that state commits a crime should not escape the consequences. (See Hall, General Principles of Criminal Law (2d ed.1960) p. 537.)
"Before the nineteenth century, the common law refused to give any effect to the fact that an accused committed a crime while intoxicated. The judges were apparently troubled by this rigid traditional rule, however, for there were a number of attempts during the early part of the nineteenth century to arrive at a more humane, yet workable, doctrine. The theory that these judges explored was that evidence of intoxication could be considered to negate intent, whenever intent was an element of the crime charged. As Professor Hall notes, however, such an exculpatory doctrine could eventually have undermined the traditional rule entirely, since some form of mens rea is a requisite of all but strict liability offenses. (Hall, Intoxication and Criminal Responsibility, 57 Harv.L.Rev. 1045, 1049.) To limit the operation of the doctrine and achieve a compromise between the conflicting feelings of sympathy and reprobation for the intoxicated offender, later courts both in England and this country drew a distinction between so-called specific intent and general intent crimes." (Hood, supra, 1 Cal.3d at pp. 455-456, 82 Cal.Rptr. 618, 462 P.2d 370, fn. omitted.)
Although we noted in Hood that specific and general intent have been notoriously difficult terms to define and apply, we set forth a general definition distinguishing the two intents: "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent." (Hood supra, 1 Cal.3d at pp. 456-457, 82 Cal.Rptr. 618, *743 462 P.2d 370.) The basic framework that Hood established in designating a criminal intent as either specific or general for purposes of determining the admissibility of evidence of voluntary intoxication has survived. (People v. Mendoza (1998) 18 Cal.4th 1114, 1128, 77 Cal.Rptr.2d 428, 959 P.2d 735.)
Defendant argues that arson requires the specific intent to burn the relevant structure or forest land, a mental state that may be negated by evidence of voluntary intoxication. The People argue that arson is a general intent crime with a mental state that cannot be negated by such evidence. The Courts of Appeal have disagreed on the intent requirement for arson.
In Stonewall F., supra, 208 Cal.App.3d 1054, 256 Cal.Rptr. 578, two minors set fire to a pile of leaves near a school building. The fire spread to the school, causing considerable damage. The juvenile court found that the minors intentionally set fire to the leaves, but that they did not intend to burn the school building. The court further found that the fire had been set recklessly, within the meaning of section 450, subdivision (f), and that the minors had also committed the more serious offense of arson. (§ 451.) The Court of Appeal, Third Appellate District, reasoned that, since section 452 created the less culpable crime of recklessly starting a fire (requiring a subjective awareness of the risk), the arson statute required a more culpable mental state "transcending recklessness," which the court labeled "intentional." (208 Cal.App.3d at p. 1067, 256 Cal.Rptr. 578.) It concluded: "To `willfully and maliciously' cause the burning of a structure under section 451, subdivision (c) must mean that the burning of the structure is the end in view of the wrongful conduct, to wit intended." (Ibid.) In light of the juvenile court's factual findings, the Court of Appeal reduced the finding from arson to the lesser offense of recklessly causing a fire.
In People v. Glover (1991) 233 Cal. App.3d 1476, 1479-1484, 285 Cal.Rptr. 362 (Second App. Dist., Div. Five) (Glover), the defendant invoked Stonewall F., claiming that the evidence did not support a specific intent to burn the relevant structure, a requirement for arson. The Glover court characterized Stonewall F. `s holding to be that arson is a specific intent crime (Glover, supra, at pp. 1479-1480, 285 Cal. Rptr. 362), but disagreed. It held that arson is a general intent crime, that it was not necessary for the evidence to show that the defendant possessed a specific intent to set fire to the apartment that had burned, and that it was required only that the acts that caused the apartment to burn were done willfully and maliciously. (Glover, supra, at pp. 1479, 1483-1484, 285 Cal.Rptr. 362.) Other Courts of Appeal have agreed with Glover. (People v. Lee (1994) 28 Cal.App.4th 659, 664, 33 Cal. Rptr.2d 782 [Second App. Dist., Div. Six]; People v. Fry (1993) 19 Cal.App.4th 1334, 1338-1339, 24 Cal.Rptr.2d 43 [Sixth App. Dist.][3]; People v. Lopez (1993) 13 Cal. App.4th 1840, 1845-1846, 17 Cal.Rptr.2d 317 [Fourth App. Dist., Div. One]; see People v. Bolden (1996) 44 Cal.App.4th 707, 717, 52 Cal.Rptr.2d 485 [Second App. Dist., Div. Seven; disagreeing with Stonewall F., but refraining "from detailing our own views" because issue necessarily resolved *744 under other, properly given instructions].)
In Fabris, the Third Appellate District revisited the issue and reaffirmed its decision in Stonewall F. (Fabris, supra, 31 Cal.App.4th at p. 693, 37 Cal.Rptr.2d 667.) Applying the general test in Hood for distinguishing between general and specific intent, the court acknowledged that arson can be characterized as a general intent crime. (Fabris, at p. 697, 37 Cal.Rptr.2d 667.) It held that the trial court did not prejudicially err in describing arson, as a general intent crime as long as "the jury is correctly appraised of the elements of arsonthat the intent required is to set fire to or cause a structure to burnand there is no issue of voluntary intoxication...." (Id. at p. 698, 37 Cal.Rptr.2d 667.) Because intoxication was not an issue in Fabris, as it was with Stonewall F., the court "impl[ied] no view whether arson, as defined in section 451, is a `specific intent crime' for purposes of section 22." (Fabris, supra, 31 Cal.App.4th at p. 696, fn. 10, 37 Cal.Rptr.2d 667.)
In this case, the Third Appellate District addressed the issue that was left unanswered in Fabris. It held that the mens rea for arson, as defined in Stonewall F. and Fabristhe intent to set fire to or burn or cause to be burned forest landis a "required specific intent" for which evidence of voluntary intoxication is admissible under section 22, subdivision (b). The Court of Appeal continued to characterize arson as a general intent crime, but relied on our opinion in People v. Mendoza, supra, 18 Cal.4th at page 1131, 77 Cal. Rptr.2d 428, 959 P.2d 735 in concluding that the intent required for section 451 arson "`is closely akin to Hood's definition of specific intent, which requires proof that the defendant acted with a specific and particularly culpable mental state.'"
We agree with the People that arson requires only a general criminal intent and that the specific intent to set fire to or burn or cause to be burned the relevant structure or forest land is not an element of arson.
"Our analysis must ... begin with an examination of the statutory language describing the proscribed conduct, including any express or implied reference to a mental state." (People v. Hering (1999) 20 Cal.4th 440, 445, 84 Cal.Rptr.2d 839, 976 P.2d 210.) "A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property." (§ 451.) "Maliciously" is defined in the arson chapter as "a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." (§ 450, subd. (e); see also § 7, subd. 4.) "Willfully" is not defined in the arson chapter, but in section 7, subdivision 1: "The word `willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage."
"[T]he terms `willful' or "willfully,' when applied in a penal statute, require only that the illegal act or omission occur `intentionally,' without regard to motive or ignorance of the act's prohibited character." (Hale v. Morgan (1978) 22 Cal.3d 388, 396, 149 Cal.Rptr. 375, 584 P.2d 512 and cases cited therein.) "Willfully implies no evil intent; `"it implies that the person knows what he is doing, intends to do what he is doing and is a free agent." [Citation.]'" (People v. Bell (1996) 45 Cal.App.4th 1030, 1043, 53 Cal. Rptr.2d 156; see also In re Trombley (1948) 31 Cal.2d 801, 807, 193 P.2d 734.) The use of the word "willfully" in a penal statute usually defines a general criminal intent, absent other statutory language that requires "an intent to do a further act or achieve a future consequence." (People v. Bell, supra, 45 Cal.App.4th at p. 1043, 53 Cal.Rptr.2d 156; see also People v. Sargent *745 (1999) 19 Cal.4th 1206, 1215, 1219, 1224, 81 Cal.Rptr.2d 835, 970 P.2d 409; People v. Colantuono (1994) 7 Cal.4th 206, 213-215, 26 Cal.Rptr.2d 908, 865 P.2d 704.)
As with "willfully," the statutory definition of "maliciously," in the context of arson, requires no specific intent. Section 450, subdivision (e) defines "maliciously" in terms of the arson statutes as "a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act...." This is the same definition found in section 7, subdivision 4, except for the addition of "defraud." Outside the context of arson, the term "malicious," as used in section 7, subdivision 4, does not transform an offense into a specific intent crime. (See People v. Laster (1997) 52 Cal.App.4th 1450, 1468, 61 Cal.Rptr.2d 680 [willful and malicious discharge of firearm from motor vehicle is a general intent crime]; People v. Jischke (1996) 51 Cal.App.4th 552, 556, 59 Cal.Rptr.2d 269 [willful and malicious discharge of firearm at inhabited dwelling house is a general intent crime]; People v. Sekona (1994) 27 Cal.App.4th 443, 448, 453, 32 Cal.Rptr.2d 606 [mayhem, defined as unlawful and malicious, is a general intent crime]; People v. Froom (1980) 108 Cal.App.3d 820, 826, 166 Cal.Rptr. 786 [diminished capacity evidence inadmissible on charge of willful and malicious shooting at inhabited dwelling]; People v. Williams (1980) 102 Cal.App.3d 1018, 1029, 162 Cal.Rptr. 748 [the words "willfully" and "maliciously" are generally expressions of general criminal intent when used in a penal statute]; People v. Bohmer (1975) 46 Cal.App.3d 185, 190-191, 120 Cal.Rptr. 136 [malicious placement of obstruction on railroad track is a general intent crime].) Nor does the term "malicious" transform an offense into a specific intent crime in the context of arson. (People v. Nance (1972) 25 Cal.App.3d 925, 930, 102 Cal. Rptr. 266 [arson does not require a specific mental state which would permit defense of diminished capacity]; see also People v. Green (1983) 146 Cal.App.3d 369, 379, 194 Cal.Rptr. 128; People v. Tanner (1979) 95 Cal.App.3d 948, 955-956, 157 Cal.Rptr. 465 [citing Nance with approval]; People v. Williams (1971) 19 Cal.App.3d 339, 345-346, 96 Cal.Rptr. 848; People v. Andrews (1965) 234 Cal.App.2d 69, 75, 44 Cal.Rptr. 94.)
As relevant here, the proscribed acts within the statutory definition of arson are to: (1) set fire to; (2) burn; or (3) cause to be burned, any structure, forest land, or property. (§ 451.) Language that typically denotes specific intent crimes, such as "with the intent" to achieve or "for the purpose of achieving some further act, is absent from section 451. (People v. Hering, supra, 20 Cal.4th at p. 446, 84 Cal.Rptr.2d 839, 976 P.2d 210.) "A crime is characterized as a `general intent' crime when the required mental state entails only an intent to do the act that causes the harm; a crime is characterized as a `specific intent' crime when the required mental state entails an intent to cause the resulting harm." (People v. Davis (1995) 10 Cal.4th 463, 518-519, fn. 15, 41 Cal.Rptr.2d 826, 896 P.2d 119.) The statute does not require an additional specific intent to burn a "structure, forest land, or property," but rather requires only an intent to do the act that causes the harm. This interpretation is manifest from the fact that the statute is implicated if a person "causes to be burned ... any structure, forest land, or property." (People v. Hiltel (1901) 131 Cal. 577, 579-580, 63 P. 919 [defendant "caused" building to be burned even though he set fire to different structure].) Thus, the intent requirement for arson fits within the Hood definition of general intent, i.e., the description of the proscribed act fails to refer to an intent to do a further act or achieve a future consequence. (Hood supra, 1 Cal.3d at pp. 456-457, 82 Cal.Rptr. 618, 462 P.2d 370.)
The statutory history of California's arson law further indicates that the Legislature did not consider arson, as defined in section 451, a specific intent crime. The common law crime of arson was the "`wilful *746 and malicious burning of the dwelling house of another.'" (In re Bramble (1947) 31 Cal.2d 43, 48, 187 P.2d 411; see United States v. Doe (9th Cir.1998) 136 F.3d 631, 635 [common law crime of arson is a general intent crime].) Before 1872, the arson statute contained no language supporting specific intent as an element of the offense, but rather paralleled the common law crime of arson as a "wilful and malicious burning." (Stats. 1856, ch. 110, §§ 4-5, p. 132; In re Bramble, supra, 31 Cal.2d at pp. 48-49, 187 P.2d 411.) This changed with the adoption of the Penal Code in 1872, which provided that "[a]rson is the willful and malicious burning of a building, with intent to destroy it." (Former § 447, enacted 1872 and repealed by Stats.1929, ch. 25, § 6, p. 47; In re Bramble, supra, 31 Cal.2d at p. 49, 187 P.2d 411.) That offense required a specific intent to destroy the property that was burned. (People v. Mooney (1899) 127 Cal. 339, 340, 59 P. 761; People v. Fong Hong (1898) 120 Cal. 685, 687, 53 P. 265.)
When arson was recodified in 1929, section 447 was repealed (Stats.1929, ch. 25, § 6, p. 47), and the new primary arson statutes (former §§ 447a, 448a, & 449a) dropped the specific intent requirement, leaving "wilfully and maliciously" as the only mental element. (Stats.1929, ch. 25, §§ 1-3, p. 46; see Glover, supra, 233 Cal. App.3d at p. 1480 & fn. 3, 285 Cal.Rptr. 362 [setting forth statutory language of former §§ 447a, 448a, & 449a].) Other arson-related crimes (former §§ 450a & 451a), as part of the 1929 enactment, contained a specific intent requirement. (Stats.1929, ch. 25, § 4, p. 46.) Former section 450a prohibited arson when done "with intent to injure or defraud the insurer." Former section 451a prohibited the placing of a "flammable, explosive or combustible material" in a building "with intent to eventually wilfully and maliciously set fire to or burn same." (Stats.1929, ch. 25, § 5, p. 47; see Glover, supra, 233 Cal.App.3d at pp. 1480-1481 & fn. 4, 285 Cal.Rptr. 362 [sets forth statutory language of former §§ 450a & 451a].)
In 1979, sections 447a, 448a, 449a, and 450a were repealed and section 451 was added to the Penal Code. (Stats.1979, ch. 145, §§ 1-3, 7, p. 338.) The basic language in former sections 447a, 448a, and 449a, "Any person who wilfully and maliciously sets fire to or burns or causes to be burned ...," was retained in section 451. (See Stats.1979, ch. 145, § 8, p. 338.) Also, section 451a was amended and renumbered; it is currently section 455. (Stats. 1979, ch. 145, § 9, p. 339.)
Since the 1929 recodification, specific intent has remained separate from the basic definition of arson as willful and malicious. (See §§ 451, subd. (d) [burning of one's own property not arson "of property" absent an intent to defraud] 451.5 [aggravated arson], 453 [possession or manufacture of combustible material or incendiary device with intent to willfully and maliciously use], 455 [placement of flammable material in or about structure is an attempt only when done with intent to eventually willfully and maliciously set fire to it].)
Also, as part of the 1979 recodification of the arson statutes, the Legislature enacted section 452, which created the crime of recklessly causing a fire, and section 450, which defined various terms, including "recklessly" (§ 450, subd. (f)) and "maliciously" (§ 450, subd. (e)).[4] (Stats.1979, ch. 145, §§ 6, 11, pp. 338-339.) Section 452 provides, in pertinent part, that, "A person is guilty of unlawfully causing a fire when he recklessly sets fire to or burns or causes to be burned, any structure, forest land or property." Section 450, subdivision (f) states: "`Recklessly' means a person is aware of and consciously disregards a substantial and unjustifiable risk that his or her act will set fire to, burn, or cause to burn a structure, forest land, or property. *747 The risk shall be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto."
Defendant reasons that, since arson is the more serious crime, it should have a more culpable mental state than the recklessness requirement of section 452. From that premise, he infers that the more culpable mental state of arson must be a specific intent. However, the lesser offense requires mere recklessness; arson requires the general intent to perform the criminal act. This is a continuum that does not support specific intent. The fact that a crime requires a greater mental state than recklessness does not mean that it is a specific intent crime, rather than a general intent crime. (People v. Rocha (1971) 3 Cal.3d 893, 898, 92 Cal.Rptr. 172, 479 P.2d 372 [although assault cannot be committed recklessly, "[i]t does not follow, however, that assault with a deadly weapon should be classified as a specific intent crime"].) The fact that reckless burning is a lesser offense of arson is also not dispositive. For example, attempted rape, a specific intent crime, is a lesser included offense of rape, a general intent crime. (People v. Osband (1996) 13 Cal.4th 622, 685, 55 Cal.Rptr.2d 26, 919 P.2d 640; People v. Kelly (1992) 1 Cal.4th 495, 526, 528, 3 Cal.Rptr.2d 677, 822 P.2d 385.)
Arson's malice requirement ensures that the act is "done with a design to do an intentional wrongful act ... without any legal justification, excuse or claim of right." (5 Am.Jur.2d (1995) Arson and Related Offenses, § 7, p. 786.) Its willful and malice requirement ensures that the setting of the fire must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire; "`in short, a fire of incendiary origin.'" (People v. Green, supra, 146 Cal.App.3d at p. 379, 194 Cal. Rptr. 128; People v. Andrews, supra, 234 Cal.App.2d at p. 75, 44 Cal.Rptr. 94; 5 Am.Jur.2d, supra, Arson and Related Offenses, § 7; accord, United States v. Doe, supra, 136 F.3d at p. 635.) "Because the offensive or dangerous character of the defendant's conduct, by virtue of its nature, contemplates such injury, a general criminal intent to commit the act suffices to establish the requisite mental state." (Cf. People v. Colantuono, supra, 7 Cal.4th at p. 215, 26 Cal.Rptr.2d 908, 865 P.2d 704 [assault].) Thus, there must be a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property. (See People v. Fry, supra, 19 Cal.App.4th at p. 1339, 24 Cal.Rptr.2d 43; Perkins & Boyce, Criminal Law (3d ed. 1982) Offenses Against Habitation and Occupancy, § 2, pp. 276-277; cf. People v. Rocha, supra, 3 Cal.3d at p. 899, 92 Cal.Rptr. 172, 479 P.2d 372 [assault]; People v. Bohmer, supra, 46 Cal. App.3d at p. 190, 120 Cal.Rptr. 136 [malicious placement of obstruction on railroad tracks].) On the other hand, the offense of unlawfully causing a fire covers reckless accidents or unintentional fires, which, by definition, is committed by a person who is "aware of and consciously disregards a substantial and unjustifiable risk that his or her act will set fire to, burn, or cause to burn a structure, forest land, or property." (§§ 450, subd. (f), 452.) For example, such reckless accidents or unintentional fires may include those caused by a person who recklessly lights a match near highly combustible materials.
Defendant argues that, because the Legislature expressly made voluntary intoxication inadmissible to negate the recklessness required for the lesser offense, but did not expressly do so for arson, it intended that voluntary intoxication evidence is admissible to negate the mental state of arson. We disagree. Unlawfully causing a fire was a new crime added by the 1979 recodification of arson. *748 (Stats.1979, ch. 145, § 11, p. 339, adding § 452; Review of Selected 1979 California Legislation (1980) 11 Pacific L.J. 412, 414.) The Legislature chose expressly to state its intent as to the new offense, one without an interpretative history. On the other hand, the Legislature did not redefine the basic definition of arson in the 1979 recodification; it retained the same "willful and malicious" language in section 451. The arson statutes, prior to the 1979 amendment (former §§ 447a, 448a, & 449a), had been construed generally as general intent crimes. (People v. Andrews, supra, 234 Cal.App.2d at pp. 74-75, 44 Cal.Rptr. 94; see also People v. Tanner, supra, 95 Cal.App.3d at pp. 955-958, 157 Cal.Rptr. 465; People v. Nance, supra, 25 Cal.App.3d at p. 930, 102 Cal.Rptr. 266; People v. Williams, supra, 19 Cal.App.3d at pp. 345-346, 96 Cal.Rptr. 848; People v. Woods (1958) 157 Cal.App.2d 617, 621-623, 321 P.2d 477 [voluntary intoxication not a defense to malicious burning under former § 449a]; People v. Mooney, supra, 127 Cal. at p. 340, 59 P. 761 [the words "willfully" and "maliciously" "import only that criminal intent which is a necessary part of every felony or other crime"].) We had also previously held, prior to the 1979 amendment, that evidence of intoxication was admissible to negate a specific intent crime, but not a general intent crime. (Hood, supra, 1 Cal.3d at pp. 455-456, 82 Cal.Rptr. 618, 462 P.2d 370.) "[W]hen the Legislature amends a statute without changing those portions of the statute that have previously been construed by the courts, the Legislature is presumed to have known of and to have acquiesced in the previous judicial construction." (People v. Blakeley (2000) 23 Cal.4th 82, 89, 96 Cal.Rptr.2d 451, 999 P.2d 675; People v. Weidert (1985) 39 Cal.3d 836, 844, 218 Cal.Rptr. 57, 705 P.2d 380.) Thus, we decline to infer an intent, which is contrary to the weight of legislative history, prior judicial interpretation, and statutory text, from legislative silence.
Defendant concedes that, prior to 1979, this court had not decided whether arson is a general or specific intent crime. Rather he argues that we indicated, in several cases, that arson required a specific intent. (People v. Nichols (1970) 3 Cal.3d 150, 163, 89 Cal.Rptr. 721, 474 P.2d 673; People v. Chavez (1958) 50 Cal.2d 778, 789, 329 P.2d 907; People v. Ashley (1954) 42 Cal.2d 246, 264, fn. 4, 267 P.2d 271.) However, in Nichols and Chavez, we adopted the defendants' characterization of arson as including a specific intent requirement, without squarely addressing the issue. In addressing those defendants' instructional claims as they related to felonymurder arson, we assumed their underlying predicate arguments that arson included a specific intent, but nevertheless, concluded that the jury had been instructed properly. Although, at one point in Nichols, we referred to arson as containing a specific intent requirement (Nichols, supra, 3 Cal.3d at p. 163, 89 Cal.Rptr. 721, 474 P.2d 673), our analysis suggested that arson was a general intent crime. (Id. at pp. 164-165["[I]n felony murder based on arson the jury need find only that the defendant intended to set the fire"]; see Glover, supra, 233 Cal.App.3d at p. 1481, 285 Cal.Rptr. 362.) In Ashley, involving a grand theft conviction, we listed arson as a specific intent crime in dicta. (See People v. Ashley, supra, 42 Cal.2d at p. 264, fn. 4, 267 P.2d 271) Even if we accept defendant's claim that the law of arson was unsettled before the 1979 amendment, the salient fact is that the Legislature has retained the same basic definition of arson as willful and malicious since the 1929 recodification, when it omitted the specific intent requirement. We infer that if the Legislature meant for arson to have a specific intent requirement, it would have said so expressly.[5]
*749 Defendant further argues that, because the mental state for arson, as with assault, can be characterized as general intent or specific intent, like Hood, the decision whether or not to give effect to evidence of intoxication must rest on policy considerations. (Hood supra, 1 Cal.3d at pp. 457-458, 82 Cal.Rptr. 618, 462 P.2d 370.) He emphasizes that, as a matter of policy, allowing intoxication evidence to negate the mental state element for arson would not necessarily result in complete acquittal, since a defendant could still be held accountable for a reckless burning, to which intoxication evidence is irrelevant. (§§ 452, 450, subd. (f); cf. People v. Whitfield, supra, 7 Cal.4th at p. 451, 27 Cal.Rptr.2d 858, 868 P.2d 272.) However, as explained above, arson's mental state can be classified clearly as a general intent. In any event, policy considerations do not support defendant's claim. Although the policy consideration advanced by defendant may be valid, the policy considerations expressed in Hood itself appear to be more consistent with the legislative intent to exclude voluntary intoxication evidence from negating the mental state of arson. There, we stated:
"A compelling consideration is the effect of alcohol on human behavior. A significant effect of alcohol is to distort judgment and relax the controls on aggressive and anti-social impulses. (Beck and Parker, The Intoxicated OffenderA Problem of Responsibility (1966), 44 Can. Bar Rev. 563, 570-573; Muelberger, Medico Legal Aspects of Alcohol Intoxication (1956), 35 Mich. State Bar J. 36, 40-41.) Alcohol apparently has less effect on the ability to engage in simple goal-directed behavior, although it may impair the efficiency of that behavior. In other words, a drunk man is capable of forming an intent to do something simple, such as strike another, unless he is so drunk that he has reached the stage of unconsciousness. What he is not as capable as a sober man of doing is exercising judgment about the social consequences of his acts or controlling his impulses toward anti-social acts. He is more likely to act rashly and impulsively and to be susceptible to passion and anger. It would therefore be anomalous to allow evidence of intoxication to relieve a man of responsibility for the crimes of assault with a deadly weapon or simple assault, which are so frequently committed in just such a manner. As the court said in Parker v. United States (D.C.Cir.1966) 359 F.2d 1009, 1012-1013, `Whatever ambiguities there may be in distinguishing between specific and general intent to determine whether drunkenness constitutes a defense, an offense of this nature is not one which requires an intent that is susceptible to negation through a showing of voluntary intoxication.'" (Hood supra, 1 Cal.3d at p. 458, 82 Cal.Rptr. 618, 462 P.2d 370.)
Later, in People v. Rocha, supra, 3 Cal.3d 893, 92 Cal.Rptr. 172, 479 P.2d 372, we rejected a contention that assault with a deadly weapon is a specific intent crime. (Id. at pp. 898-899, 92 Cal.Rptr. 172, 479 P.2d 372.) We based that conclusion on the legislative history of section 245, cases that have traditionally viewed assault as a general intent crime, and the Hood consideration that voluntary intoxication so naturally lends itself to the commission of assault. "Since alcohol is so often a factor inducing simple assaults ... it would be anom[a]lous to permit exculpation because of intoxication." (Rocha, at p. 898, 92 Cal. Rptr. 172, 479 P.2d 372.)
In arson, as with assault, there is generally no complex mental state, but only relatively simple impulsive behavior. A typical arson is almost never the product of pyromania (see Leong, A Psychiatric Study of Persons Charged with Arson (1992) 37 J. Forensic Sci. 1319, 1324; Ritchie & Huff, Psychiatric Aspects of Arsonists (1999) 44 J. Forensic Sci. 733, 738-739 (Ritchie & Huff); Räsänen et al, The Mental State of Arsonists as Determined by Forensic Psychiatric Examinations (1995) 23 Bull. Am. Acad. Psychiatry L. 547, 548 (Räsänen et al.)). Instead, "it *750 often is an angry impulsive act, requiring no tools other than a match or lighter, and possibly a container of gasoline." (Ritchie & Huff, supra, 44 J. Forensic Sci. at p. 733.) "Arson is one of the easiest crimes to commit on the spur of the moment ... it takes only seconds to light a match to a pile of clothes or a curtain." (Ibid.)
The apparent legislative policy concerns are consistent with studies that have shown the following: that revenge and vindictiveness are principal motives for arson (see, e.g., Ritchie & Huff, supra, 44 J. Forensic Sci. at p. 735; Leong & Silva, Revisiting Arson from an Outpatient Forensic Perspective (1999) 44 J. Forensic Sci. 558, 562); that there is a strong relationship between alcohol intoxication and arson (see, e.g., Räsänen et al., supra, 23 Bull. Am. Acad. Psychiatric L. at p. 549 [86 percent of arsonists intoxicated on alcohol during arson]; Ritchie & Huff, supra, 44 J. Forensic Sci. at p. 737 [55 percent of arsonists intoxicated on alcohol and more than 60 percent of arsonists under influence of some intoxicant during arson]; Koson & Dvoskin, Arson: A Diagnostic Study (1982) 10 Bull. Am. Acad. Psychiatry L. 39, 42-43 (Koson & Dvoskin) [57.7 percent of arsonists intoxicated on alcohol or drugs and alcohol during arson]); and that recidivist arsonists committing chronic or repetitive arson have high levels of alcohol dependence (see, e.g., Koson & Dvoskin, supra, 10 Bull. Am. Acad. Psychiatry L. at p. 47). Thus, the motivations for most arsons, the ease of its commission, and the strong connection with alcohol reflect the crime's impulsiveness. "It would therefore be anomalous to allow evidence of intoxication to relieve a man of responsibility for the crime[ ] of [arson], which [is] so frequently committed in just such a manner." (Hood, supra, 1 Cal.3d at p. 458, 82 Cal.Rptr. 618, 462 P.2d 370.)
Relying on Mendoza, defendant argues that even if arson is a general intent crime, the mental state for arson is a "required specific intent" for purposes of section 22. (People v. Mendoza, supra, 18 Cal.4th at p. 1131, 77 Cal.Rptr.2d 428, 959 P.2d 735.) In Mendoza, we held that the mental state for aider and abettor Kability, which has intent and knowledge components, is a "required specific intent" for purposes of section 22, subdivision (b). (People v. Mendoza, supra, 18 Cal.4th at p. 1131, 77 Cal.Rptr.2d 428, 959 P.2d 735.) An aider and abettor must "`act with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.'" (Id. at p. 1123, 77 Cal.Rptr.2d 428, 959 P.2d 735, original italics.) Although we concluded that the intent requirement for an aider and abettor fit the Hood definition of specific intent, we also recognized that knowledge did not expressly fall within section 22. (Mendoza, at pp. 1129, 1131, 77 Cal.Rptr.2d 428, 959 P.2d 735.)
Mendoza does not support defendant's position. An aider and abettor must intend not only the act of encouraging and facilitating, but also the additional criminal act the perpetrator commits. (People v. Mendoza, supra, 18 Cal.4th at p. 1129, 77 Cal.Rptr.2d 428, 959 P.2d 735.) Because the knowledge requirement was intimately entwined with intent, we concluded that it "`is closely akin to Hood's definition of specific intent.'" (Id. at p. 1131, 77 Cal.Rptr.2d 428, 959 P.2d 735.) On the other hand, the definition of arson does not refer to defendant's intent to do some further act or achieve some additional consequence. Moreover, our holding in Mendoza "is very narrow," limited to admission of evidence of intoxication solely on the question of aider and abettor liability. (Id. at p. 1133, 77 Cal.Rptr.2d 428, 959 P.2d 735.)
Finally, we reject defendant's argument that the withholding of voluntary intoxication evidence to negate the mental state of arson violates his due process rights by denying him the opportunity to prove he did not possess the required mental state. (Montana v. Egelhoff (1996) *751 518 U.S. 37, 39-40, 56, 116 S.Ct. 2013, 135 L.Ed.2d 361.)

CONCLUSION
We reverse the judgment of the Court of Appeal and remand the cause to the Court of Appeal for further proceedings consistent with this opinion.
GEORGE, C.J., KENNARD, BAXTER, and WERDEGAR, JJ., concur.
Concurring Opinion by MOSK, J.
I concur in the result.
I join in the majority's conclusion that evidence of voluntary intoxication is inadmissible to disprove the mental state required for the crime of arson. But I cannot join in the analysis that they present in support.
The admissibility of evidence of voluntary intoxication to disprove the mental state required for a crime does not depend, ultimately, on relevance. Such evidence has a tendency in reason, either greater or lesser, to disprove any mental state. (See Evid.Code, § 210.) Some mental state, if only consciousness, is required for every crime, even one termed a "strict liability" offense. (See Pen.Code, § 26, par. Four.)
Rather, the admissibility of evidence of voluntary intoxication to disprove the mental state required for a crime depends, ultimately, on policyspecifically, as we explained in People v. Hood (1969) 1 Cal.3d 444, 82 Cal.Rptr. 618, 462 P.2d 370, the policy of the Legislature, implicit in section 22 of the Penal Code, to "achieve" a "humane, but workable," "compromise between the conflicting feelings of sympathy and reprobation for the intoxicated offender" (People v. Hood supra, 1 Cal.3d at p. 456, 82 Cal.Rptr. 618, 462 P.2d 370).
In implementing the legislative policy on voluntary intoxication, we use the notions of general intent and specific intent.
"General intent" and "specific intent" have "evolved as labels to identify" particular crimes, with "specific intent" crimes allowing the admission of evidence of voluntary intoxication to disprove the required mental element and "general intent" crimes not doing so. (People v. Sargent (1999) 19 Cal.4th 1206, 1228, 81 Cal.Rptr.2d 835, 970 P.2d 409 (cone. opn. of Mosk, J.); accord, People v. Cain (1995) 10 Cal.4th 1, 83, 40 Cal.Rptr.2d 481, 892 P.2d 1224 (cone. opn. of Mosk, J.); People v. Hood supra, 1 Cal.3d at pp. 455-457, 82 Cal.Rptr. 618, 462 P.2d 370; see People v. Whitfield (1994) 7 Cal.4th 437, 463, 27 Cal.Rptr.2d 858, 868 P.2d 272 (cone, and dis. opn. of Mosk, J.).)
Pursuant to the accepted rule of thumb, "`[g]eneral intent' has usually been affixed if the mental element of a crime "entails only an intent to engage in certain proscribed conduct." (People v. Sargent, supra, 19 Cal.4th at p. 1228, 81 Cal.Rptr.2d 835, 970 P.2d 409 (cone. opn. of Mosk, J.); accord, People v. Hood, supra, 1 Cal.3d at pp. 456-457, 82 Cal.Rptr. 618, 462 P.2d 370.) "In contrast, `specific intent' has usually been affixed if the mental element of a crime "entails an intent to engage in certain proscribed conduct for the purpose of bringing about, or allowing, a certain proscribed result." (People v. Sargent, supra, 19 Cal.4th at p. 1228, 81 Cal.Rptr.2d 835, 970 P.2d 409 (cone. opn. of Mosk, J.); accord, People v. Hood supra, 1 Cal.3d at p. 457, 82 Cal.Rptr. 618, 462 P.2d 370.)
But even if "specific intent" could be affixed to a given crime in accordance with this rule of thumb, "general intent" must be affixed instead if the crime in question is itself closely linked to voluntary intoxication in its commission. (See People v. Hood supra, 1 Cal.3d at p. 458, 82 Cal. Rptr. 618, 462 P.2d 370.)
Let us turn to the crime of arson:
"A person is guilty of arson when he ... willfully and maliciously sets fire to or burns or causes to be burned ... any structure, forest land, or property." (Pen. Code, § 451.) The perpetrator acts "willfully" when he acts with a "purpose or *752 willingness to commit the act ... referred to." (Id., § 7, item 1.) The perpetrator acts "maliciously" when he acts with a "wish to vex, defraud, annoy, or injure another person" or with an "intent to do" any other "wrongful act." (Id., § 450, subd. (e).)
Thus, the crime of arson requires a mental state with two components. In its first component, arson requires that the perpetrator act with the "purpose" or "willingness" (Pen.Code, § 7, item 1) to "set fire to" a "structure, forest land, or property," to "burn" any such object, or to "cause" it "to be burned" (id., § 451). Apparently, the perpetrator's intent need not be resultative, in the sense of aiming to burn down an indicated object.[1] But it must be inceptive, in the sense of aiming to start a fire. In its second component, arson requires that the perpetrator act for the purpose of "do[ing]" any other "wrongful act," including "vex[ing], defraud[ing], annoy[ing], or injuring] another person." (Pen.Code, § 450, subd. (e).)
It follows that the mental state required for the crime of arson could readily be deemed to be one of specific intentnamely, an intent to engage in certain proscribed conduct, that is, setting fire to an indicated object, burning it, or causing it to be burned, for the purpose of bringing about, or allowing, a certain proscribed result, that is, any other wrong, including vexation, fraud, annoyance, or injury to another person.
But, even though "specific intent" could be affixed to the crime of arson, "general intent" should be affixed instead. That is because arson is itself closely, indeed very closely, linked to voluntary intoxication in its commissionvoluntary intoxication attending arson more often, and perhaps far more often, than not. (See, e.g., Ritchie & Huff, Psychiatric Aspects of Arsonists (1999) 44 J. Forensic Sci. 733, 737; Räsänen et al., The Mental State of Arsonists as Determined by Forensic Psychiatric Examinations (1995) 23 Bull. Am. Acad. Psychiatry L. 547, 549; Koson & Dvoskin, Arson: A Diagnostic Study (1982) 10 Bull. Am. Acad. Psychiatry L. 39, 42-43.) "It would therefore be anomalous," in Hood's words, "to allow evidence of [voluntary] intoxication to relieve a man of responsibility for" arson, which is "so frequently committed in just such a manner." (People v. Hood, supra, 1 Cal.3d at p. 458, 82 Cal. Rptr. 618, 462 P.2d 370.)
Although they apparently recognize that "general intent" should be affixed to the crime of arson because arson is itself closely linked to voluntary intoxication in its commission, the majority deny that the mental state required could readily be deemed to be one of specific intent. Their denial is inexplicable. It is also incorrect. They seem to rest on the premise that the perpetrator's intent must be inceptive, aiming to start a fire, and apparently need not be resultative, aiming to burn down an indicated object. Even if their premise is sound, it gives them no aid. For, even if the perpetrator's intent must be inceptive rather than resultative, the required mental state could readily be deemed to be one of specific intentagain, an intent to engage in proscribed conduct involving setting fire to an indicated object, burning it, or causing it to be burned, for the purpose of bringing about, or allowing, a proscribed result involving any other wrong, including vexation, fraud, annoyance, or injury to another person. At the end of the day, all that the majority have to justify their denial seems to be an assumption that the perpetrator's intent must be resultative rather than inceptive. Hood itself is plain: "When" a crime "refers to" the perpetrator's "intent to do some further act or achieve some additional consequence" beyond the "description of a particular act," the "crime is deemed to be one of specific intent." (People v. *753 Hood, supra, 1 Cal.3d at pp. 456, 457, 82 Cal.Rptr. 618, 462 P.2d 370, italics added.) The majority's assumption is that, beyond referring to the perpetrator's setting fire to an indicated object, burning it, or causing it to be burned, arson must refer to an intent on his part to achieve a particular additional consequence, that is, to burn the object down, as opposed to doing any other wrong, including vexation, fraud, annoyance, or injury to another person. Their assumption is unsupported. Hence, it falls of its own weight.
In sum, although I cannot join in the majority's analysis, I do indeed join in their conclusion that evidence of voluntary intoxication is inadmissible to disprove the mental state required for the crime of arson. Because I do so, I concur in the result.
Concurring Opinion by BROWN, J.
I concur in the determination that arson is a general intent crime precluding a defense of voluntary intoxication. I write separately because I remain convinced People v. Mendoza (1998) 18 Cal.4th 1114, 77 Cal.Rptr.2d 428, 959 P.2d 735 (Mendoza) was wrongly decided (see id. at pp. 1138-1141, 77 Cal.Rptr.2d 428, 959 P.2d 735 (dis. opn. of Brown, J.)) and, as this case illustrates, will continue to wreak havoc in the lower courts for years to come.
In finding arson to be a specific intent crime, the Court of Appeal initially cited its own decisions in In re Stonewall F. (1989) 208 Cal.App.3d 1054, 256 Cal.Rptr. 578 and People v. Fabris (1995) 31 Cal. App.4th 685, 37 Cal.Rptr.2d 667; but it substantially bolstered this conclusion by drawing heavily on Mendoza, supra, 18 Cal.4th at pages 1126-1132, 77 Cal.Rptr.2d 428, 959 P.2d 735, as well as People v. Whitfield (1994) 7 Cal.4th 437, 27 Cal. Rptr.2d 858, 868 P.2d 272on which the Mendoza court principally reliedand People v. Reyes (1997) 52 Cal.App.4th 975, 61 Cal.Rptr.2d 39which it cited with approval. The common thread of these cases is the transmutation of a knowledge requirement into a specific intent: Thus, the Mendoza court explained that "although knowledge `may not fall literally within the Hood formulation of specific intent, the element [of aiding and abetting liability] that requires that the defendant act with knowledge of [the perpetrator's criminal intent] is closely akin to Hood's definition of specific intent, which requires proof that the defendant acted with a specific and particularly culpable mental state.' [Citations.]" (Mendoza, at p. 1131, 77 Cal. Rptr.2d 428, 959 P.2d 735, quoting Whitfield, at p. 450, 27 Cal.Rptr.2d 858, 868 P.2d 272, and citing Reyes, at pp. 982-986, 61 Cal.Rptr.2d 39.) From this kernel and its analysis of Whitfield and Reyes, the Court of Appeal extracted the essential support for its earlier determination that voluntary intoxication is a defense to arson.
Unconvincingly, in my view, the majority attempts to distinguish Mendoza. (Maj. opn., ante, 104 Cal.Rptr.2d at pp. 750-751, 18 P.3d at p. 671.) Consistent with the reasoning in my dissent, I anticipate this effort will likely cause more confusion than clarification by reinforcing the fundamental analytical error of Mendoza, which was to step outside the terms of Penal Code section 22 without a principled basis for doing so.
NOTES
[1] All further undesignated statutory references are to the Penal Code.
[2] The trial court defined arson, in the language of CALJIC No. 14.80, as follows: "Any person who willfully and maliciously sets fire to or burns or causes to be burned any forest land is guilty of arson in violation of [section 451, subdivision (c)]. [¶] The word `willfully' means intentionally. The word `maliciously' means with a wish to vex, annoy or injure another person, or with an intent to do a wrongful act. [¶] In order to prove this crime, each of the following elements must be proved: [¶] [1.] A person set fire to or burned or caused to be burned a forest land and [¶] [2.] The fire was set or burning was done willfully and maliciously."
[3] As with Stonewall F., the defendant in Fry did not directly set fire to the relevant structure. In Fry, the defendant, while drunk and angry at his girlfriend, set fire to four vehicles, and the fire in one vehicle damaged the carport it was parked in. He was convicted of one count of arson of a structure and four counts of arson of a vehicle. Because there was substantial evidence that he willfully and maliciously set fire to a car, and his conduct actually and proximately caused the carport to be burned, Fry held there was substantial evidence to support the conviction for arson of a structure. It stated, "The [trial] court's comments that defendant did not specifically intend for the carport to burn are of no legal import on the issue of guilt." (People v. Fry, supra, 19 Cal.App.4th at p. 1339, 24 Cal. Rptr.2d 43.)
[4] Before the 1979 recodification, the term "maliciously" was defined in section 7, subdivision 4.
[5] To the extent that Stonewall F., supra, 208 Cal.App.3d 1054, 256 Cal.Rptr. 578, and Fabris, supra, 31 Cal.App.4th 685, 37 Cal. Rptr.2d 667, are inconsistent with this opinion, we disapprove these decisions.
[1] The crime of arson was formerly defined in former § 447, enacted 1872 and repealed language requiring that the perpetrator act Stats. 1929, ch. 25, § 6, p. 47.) It is not now with the "intent to destroy." (E.g., Pen.Code, so defined.