Filed 9/25/23  P. v. Vongchanh CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C097089 |
| v. | (Super. Ct. No. 22CF01797) |
| SOURIYA DANNY VONGCHANH, | |
| Defendant and Appellant. | |

A jury convicted defendant Souriya Danny Vongchanh of arson after he set a fire in Oroville.  (Pen. Code, § 451, subd. (c).)[1]  In a bifurcated proceeding, the trial court found that defendant had been previously convicted of arson in 2019, a serious felony offense within the meaning of the three strikes law (§§ 1170.12, 667, subd. (b)-(i))

---

[1] Undesignated statutory references are to the Penal Code.

1

and also qualifying him for an additional five-year term of imprisonment. (§ 667, subd. (a)(1).) The trial court sentenced defendant to serve an aggregate determinate prison term of 13 years.

On appeal, defendant contends (1) there is insufficient evidence that he acted intentionally and maliciously when he set the fire, and (2) the trial court abused its discretion in declining to strike the five-year enhancement under section 1385, as recently amended by Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81).

Finding no merit in defendant's contentions, we will affirm the judgment.

BACKGROUND

On April 11, 2022, at 9:41 a.m., Battalion Chief Isaac Ruiz of the Oroville Fire Department was dispatched to a fire at Bedrock Park in Oroville. Bedrock Park is situated along the Feather River with a residential community directly to the south. Immediately adjacent to the park are tennis courts, separated from the park and river by a levee.

As Chief Ruiz approached the park, he saw smoke coming from the lower part of the levee, just north of the tennis courts. When he got closer, he could see a small fire burning the short grass that was growing on the levee, as well as fallen leaves and other organic material. Defendant was standing in a blackened area. Chief Ruiz asked defendant what he was doing and defendant said he "lit the fire to clear the white grass" and rid the area of either ticks or leeches. Ruiz remembered defendant's response because he thought it was odd. Ruiz testified that fires are not allowed at the park, and wind could cause a fire to travel from the levee and threaten homes and property. Ruiz contacted law enforcement.

A fire engine arrived and Chief Ruiz told defendant to leave so his firefighters could put out the fire. Defendant said he would put the fire out himself, picked up a nearby concrete block, and started slamming the block on the ground. Ruiz again asked

2

defendant to leave and he eventually did so. After firefighters extinguished the fire, Ruiz canceled the request for law enforcement and returned to the fire house.

Officer Isaac Herrera of the Oroville Police Department was initially dispatched to the park at 10:03 a.m. That request was canceled. About 20 minutes later, he was again dispatched to the park. The second call was prompted by another fire about 10 feet from the first fire. Officer Herrera received a description of a suspect seen walking away from the fire. Herrera detained defendant, who matched the description, about 300 yards from the park. Defendant made spontaneous statements about a volcano in Hawaii and "identifying an area as red and then having to burn it to turn white."

Chief Ruiz was also dispatched to the second fire. The fire was burning a little higher on the levee. A fire engine was already there to put out the fire. Ruiz was informed there was a suspect in custody a short distance away. He drove to where Officer Herrera had detained defendant and positively identified defendant as the person who started the first fire. According to Ruiz, he asked defendant whether he started the second fire and defendant said something like he still needed to clean it out.

DISCUSSION

I

Defendant's arson conviction is based on the first fire he set on the levee between the park and the tennis courts. Defendant contends there is insufficient evidence that he acted intentionally and maliciously in setting the fire.

In reviewing a challenge based on sufficiency of the evidence, we must " 'review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence -- that is, evidence that is reasonable, credible, and of solid value -- from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

3

have found the essential elements of the crime beyond a reasonable doubt.' [Citations.]" (*People v. Lewis* (2009) 46 Cal.4th 1255, 1289-1290, italics omitted.)

"A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property." (§ 451.) " 'Forest land' means any brush covered land, cut-over land, forest, grasslands, or woods." (§ 450, subd. (b).)

Defendant does not challenge the sufficiency of the evidence that he set the fire, or that the area burned was forest land. Defendant's focus is on whether he acted willfully and maliciously.

The word "willfully" in this context means a purpose or willingness to commit the act, and does not require an intent to violate the law or injure another. (*In re V.V.* (2011) 51 Cal.4th 1020, 1027.) "Maliciously" means a wish to vex, defraud, annoy, or injure another person, but it can also mean an intent to do a wrongful act. (*Ibid*.) The word "willfully" in a penal statute usually refers to general criminal intent. (*People v. Atkins* (2001) 25 Cal.4th 76, 85 (*Atkins*).) And when it comes to arson, the word "maliciously" does not transform an offense into a specific intent crime. (*Id*. at p. 86.) Malice in law -- the intent to do a wrongful act -- may be presumed or implied from the intentional doing of the act without justification or excuse or mitigating circumstances. (*In re V.V.,* at p. 1028.)

Section 451's requirement that the act be done willfully and maliciously ensures that the fire was deliberate and intentional rather than accidental or unintentional. (*Atkins, supra*, 25 Cal.4th at pp. 88-89.) Due to the dangerous nature of such conduct, a general criminal intent to commit the act suffices to establish the requisite mental state. (*Ibid*.)

Defendant's conduct satisfies this standard. He admitted lighting the fire to clear the white grass and rid the area of ticks or leeches. His act was intentional and was done without legal justification, therefore maliciousness is presumed or implied. (*In re V.V.,*

4

*supra*, 51 Cal.4th at p. 1028.) Indeed, defendant's conduct was arguably more egregious than that of the minors in *In re V.V.*, who set off a firecracker on a brush-covered hillside. (*Id*. at p. 1023.) The California Supreme Court determined their conduct satisfied the malice requirement because they intentionally set off a firecracker creating an obvious fire hazard and did so without justification. (*Id*. at pp. 1028, 1030-1031.) Here, defendant intended to light a portion of the levee on fire, and did so without legal justification.

Defendant relies on *In re Stonewall F.* (1989) 208 Cal.App.3d 1054, arguing he did not start the fire willfully and maliciously because, like the minor in *Stonewall*, who set fire to a pile of leaves but had no intent for the fire to spread to a school building, defendant had no intent to burn anything other than his camping area. But the California Supreme Court disapproved *Stonewall* to the extent it concluded arson was a specific intent offense requiring an intent to burn a specific property. (*Atkins, supra*, 25 Cal.4th at p. 90, fn. 5; see also *Mason v. Superior Court* (2015) 242 Cal.App.4th 773, 784.) Because defendant intentionally started the fire, creating an obvious fire hazard, and did so without justification, he did so maliciously. (*In re V.V., supra*, 51 Cal.4th at p. 1028.)

The evidence is sufficient to support defendant's arson conviction.

II

Defendant further contends the trial court abused its discretion in declining to strike the five-year enhancement under section 1385, as recently amended by Senate Bill No. 81.

Senate Bill No. 81, effective January 1, 2022, "amended section 1385 to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674; see Stats. 2021, ch. 721, § 1.) As relevant here, subdivision (c)(1) of the amended statute provides: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if

5

dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1).) Subdivision (c)(2) provides, in relevant part: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subdivision (c)(2).)

At defendant's sentencing hearing, the trial court specifically considered whether to strike the five-year enhancement under amended section 1385 and declined to do so. Defendant claims this was an abuse of discretion because the following two mitigating circumstances apply to him: "(D) The current offense is connected to mental illness. [¶] . . . [¶] (F) The current offense is not a violent felony as defined in subdivision (c) of Section 667.5." (§ 1385, subd. (c)(2).) (AOB 18) Defendant observes that in selecting the middle term, the trial court identified defendant's apparent mental illness as a factor in mitigation, although it also noted there was no indication defendant had been diagnosed with mental illness.

The trial court declined to strike the enhancement, finding that dismissal of the enhancement would endanger public safety. (§ 1385, subd. (c)(2).) The trial court stated: "I've considered the prior offense and current offense both involve setting fires unlawfully. [¶] Here the fire was set near the downtown Oroville area, near residences, and in a park area where the potential for danger, of which all of us in Butte County are acutely aware, is extremely high. And so I am finding that it would be a danger to public safety to strike that [section] 667 [subdivision] (a)(1) enhancement, and I'll decline to strike the enhancement under that section." Contrary to defendant's argument, this was not an abuse of discretion, given that defendant was twice convicted of arson within a

6

span of three years and the current arson offense was committed near a residential neighborhood.

## DISPOSITION

The judgment is affirmed.

/S/
MAURO, J.

We concur:

/S/
ROBIE, Acting P. J.

/S/
BOULWARE EURIE, J.