179 Cal.App.4th 1337 (2009)
In re J.H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
J.H., Defendant and Appellant.
No. B212635.
Court of Appeals of California, Second District, Division Eight.
December 3, 2009.
*1339 Holly Jackson, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan D. Martynec and Robert M. Snider, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
MOHR, J.[*]

SUMMARY
A person is guilty of arson if he or she "willfully and maliciously sets fire to or burns or causes to be burned" any structure, forest land, or property. *1340 (Pen. Code, § 451.)[1] The juvenile court found a minor was guilty of arson after the minor and his friends lit a firecracker (a "cherry bomb") in a wooded area and caused a fire that burned five acres of forest land. Although the court found that the minors "had no intention to set the hill on fire" and were "basically good kids" who were "playing with firecrackers," the court concluded that, under People v. Atkins (2001) 25 Cal.4th 76 [104 Cal.Rptr.2d 738, 18 P.3d 660] (Atkins), "[a]ll they had to do is intend to light the firecracker. . ." in order to be guilty of arson.
We conclude the juvenile court misapplied the principles stated in Atkins, and there was no evidence that the act that caused the fire was done with the requisite mental state, i.e., maliciously. The trial court should have found the minor guilty of the lesser included offense of unlawfully causing a fire, and we modify the judgment accordingly.

FACTUAL AND PROCEDURAL BACKGROUND
On July 22, 2008, the Los Angeles County District Attorney filed a two-count petition alleging that the 17-year-old minor, J.H., came within the provisions of section 602 of the Welfare and Institutions Code, in that he committed the crime of arson of a structure or forest land, a felony (§ 451, subd. (c)) (count 1), and the crime of recklessly causing a fire of a structure or forest land, a felony (§ 452, subd. (c)) (count 2). The minor denied the allegations. After the People presented evidence on November 5, 2008, the juvenile court sustained the petition on count 1 (arson) and dismissed count 2. The court placed the minor home on probation, with six years as the maximum period of confinement.[2]
The minor filed a timely appeal, contending the evidence was insufficient to sustain the true finding on the arson count.
The evidence showed the following. On the afternoon of July 18, 2008, Abel Ramirez, a Pasadena resident, was on his patio and heard a "very loud boom." Almost immediately thereafter, he saw smoke rising from a field on the side of a hillside behind his house, and several minutes later he saw a fire. He then spotted three young people running down the hill, one of whom was the minor. He called 911 to report the fire and later identified the minor by the clothes he was wearing. Another witness, Ara Moujoukian, heard noise in front of his house near the same location. The noise sounded like young *1341 people exhibiting "erratic behavior" and "yelling `wow, look. Look.'" He also heard laughing. He went outside to see what was happening and encountered three young people, one of whom was J.H. When he asked them what they were doing, they ran away. Then he noticed the fire on the hill behind his house and called 911. Moujoukian later identified J.H. and the others as the young people he had seen.
Officer Brian Bozarth and Sergeant Bugh responded to the scene and saw the three young people walking in the street about one-quarter of a mile from the fire. Sergeant Bugh detained the three. A patdown search of one of the three (not J.H.) disclosed a lighter and "a large firecracker that would be described as a cherry bomb," about the size of a golf ball, with a fuse coming out of the top. The individual who was searched told Officer Bozarth, referring to the firecracker, "`That's what caused the fire,'" and that "he blew one up on the hill which caused the bush to catch on fire." Bozarth also noticed that J.H. had a gray substance on his fingertips that resembled gunpowder from fireworks.
The parties stipulated that the fire prevention officer who investigated the fire would have testified that he did not find any physical evidence of an ignition source, and that the fire/burn indicators and damage to the slope were consistent with having been caused by an incendiary device such as a cherry bomb or firecracker.
Detective Jesse Carrillo interviewed J.H. and another individual. The boys indicated they had gone to the area in order to climb the hillside and then go to Chinatown to eat. They explained to Carrillo that they lit the firecracker "[j]ust to make a lot of noise," and J.H. told Carrillo that he intended to throw the firecracker toward a concrete area.[3] (A cement drainage area was located, Carrillo estimated, about 150 yards from the fire's origin.) When they threw the firecracker, the boys "were positioned at an area looking down to where the flashpoint was . . . ."
*1342 J.H. presented no evidence. The court heard closing arguments and made these observations:
 "Why isn't this just reckless conduct[?] If these kids didn't want to set the hill on fire, we all know that."
 "The question is whether People have met their burden in count 1; obviously, count 2 is a lesser included. But in count 1, the question to me is whether I believe that the natural and probable consequence or highly probable consequence of lighting a firecracker on a hillside and throwing it some distance away trying to hit a patch of green or a patch of cement[, s]o it does not cause the hill to catch on fire and then the hill catches on fire whether that meets the requirement of the law. And, I guess, I think it does. That's notwithstanding the fact that I don't believe the kids had any intention to set the hill on fire; that's not the issue."
 "Atkins . . . says that intentional at this point is the actual lighting of the firecracker without regard of their ultimate intention or the ultimate crime of burning down the hill. All they had to do is intend to light the firecracker or do so in such a way that is likely to produce the kind of injury that occurred."
 "My problem is, I think, People have met their burden under the law [and] count 1 is true. . . . [C]ount two, obviously, the penalty would merge because I don't want these kids to have two felonies on their record. [¶] I will dismiss count 2 . . . I think their conduct in the vernacular was reckless and not in the legal. I think People have met their burden under the law of count 1, but I think these are basically good kids and there's no reason to believe they would cause anymore fires or anything. If they successfully complete probation I will be reducing it upon a motion to a lesser included. But you can certainly appeal it and probably should."
 "Again, I don't see these kids as pyromaniacs. I see them playing with firecrackers like the officer [Bozarth] [testified he] did. And many of us did."[4]
The court declared J.H. a ward of the court, placed him home on probation, and imposed various terms and conditions of probation which are not at issue on this appeal.

DISCUSSION
J.H. contends that the evidence was insufficient to sustain the arson count, because the act of lighting a firecracker without any intent to do harm, but *1343 which causes a fire, is not arson. We agree. Entirely absent in J.H.'s case is any evidence of "[a]rson's malice requirement [which] ensures that the act is `done with a design to do an intentional wrongful act. . . .'" (Atkins, supra, 25 Cal.4th at p. 88.)
(1) The arson statute provides: "A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property." (§ 451.) A person is guilty of the lesser included offense of unlawfully causing a fire "when he recklessly sets fire to or burns or causes to be burned, any structure, forest land or property." (§ 452.)
Our analysis begins (and ends) with the Supreme Court's opinion in Atkins. Atkins held that evidence of voluntary intoxication was not admissible on the issue of whether a defendant had formed the required mental state for arson, because arson is a general intent crime.[5] (Atkins, supra, 25 Cal.4th at p. 79.) Because arson requires only general criminal intent, the court held, "[T]he specific intent to set fire to or burn or cause to be burned the relevant structure or forest land is not an element of arson." (Atkins, supra, 25 Cal.4th at p. 84.) Thus, in J.H.'s case, the prosecution was not required to prove that J.H. specifically intended to set fire to the hillside. The prosecution was, however, required to prove that the acts that caused the hillside to burn were done "willfully and maliciously" (§ 451, italics added), that is, "`with a design to do an intentional wrongful act . . . .'" (Atkins, supra, 25 Cal.4th at p. 88.) This the prosecution did not do.
The Atkins decision considers at length both the distinction between specific and general intent crimes,[6] which "`evolved as a judicial response to the problem of the intoxicated offender,'" and the intent requirement for arson, upon which the Courts of Appeal had disagreed. (Atkins, supra, 25 Cal.4th at pp. 82, 81-84.) The court then examined the statutory language, including the meaning of the terms "willfully" and "maliciously" as used in the statute to describe the mental state required for the crime of arson. (Id. at pp. 84-87.) The court concluded that the terms "willfully" and "maliciously" do not require specific intent, that is, they do not require "`intent to cause the resulting harm.'" (Id. at pp. 85, 86.) Thus, the statutory term "malicious" does not "transform an offense into a specific intent crime in the context of *1344 arson." (Id. at p. 86.)[7] Arson, like other general intent crimes, "requires only an intent to do the act that causes the harm." (25 Cal.4th at p. 86.)
When it concluded that "[a]ll they had to do is intend to light the firecracker . . .," the juvenile court was focusing on the statement by the Supreme Court that arson "requires only an intent to do the act that causes the harm," not "`an intent to cause the resulting harm.'" (Atkins, supra, 25 Cal.4th at p. 86.) But nothing in Atkins allows a court to ignore the statutory requirement that the act must be done "maliciously" or to ignore the court's explanation of the malice requirement for arson. The court specifically discussed both the terms "willfully" and "maliciously":
 The term "willfully," the court explained, "`implies simply a purpose or willingness to commit the act,'" and when applied in a penal statute "`require[s] only that the illegal act or omission occur "intentionally," without regard to motive or ignorance of the act's prohibited character.'" (Atkins, supra, 25 Cal.4th at p. 85.)
 The term "maliciously" is defined in the arson statute itself: "`Maliciously' imports a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." (§ 450, subd. (e); see Atkins, supra, 25 Cal.4th at p. 85.)
(2) In short, while Atkins held that the statutory term "malicious" does not transform arson into a specific intent crime (so that a defendant need not intend to cause the resulting harm), Atkins in no way purported to eliminate malice as the required mental state for arson. (See also People v. Glover, supra, 233 Cal.App.3d at pp. 1479, 1483-1484 [it was not necessary for evidence to show that the defendant possessed a specific intent to set fire to the apartment that had burned; it was required only that the acts that caused the apartment to burn were done willfully and maliciously]; see Atkins, supra, 25 Cal.4th at p. 83.) Thus, after concluding that the arson statute "does not require an additional specific intent to burn a `structure, forest land, or property,' but rather requires only an intent to do the act that causes the harm" (id. at p. 86), the Supreme Court further explained:
 When the arson statute was recodified in 1929, the recodification dropped an earlier requirement of a specific intent to destroy the property that is burned, "leaving `wilfully and maliciously' as the only mental element." (Atkins, supra, 25 Cal.4th at p. 87 ["Since the 1929 recodification, specific intent has remained separate from the basic definition of arson as willful and malicious."].)
*1345  As part of the 1979 recodification, the Legislature created the crime of recklessly causing a fire and defined the terms "recklessly" and "maliciously." (Atkins, supra, 25 Cal.4th at pp. 87-88.)
 "[T]he lesser offense requires mere recklessness; arson requires the general intent to perform the criminal act." (Atkins, supra, 25 Cal.4th at p. 88.)
 "Arson's malice requirement ensures that the act is `done with a design to do an intentional wrongful act . . . .' [Citation.] Its willful and malice requirement ensures that the setting of the fire must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire; `"in short, a fire of incendiary origin."' [Citations.] `Because the offensive or dangerous character of the defendant's conduct, by virtue of its nature, contemplates such injury, a general criminal intent to commit the act suffices to establish the requisite mental state.'" (Atkins, supra, 25 Cal.4th at pp. 88-89.)
 The court then contrasted arson and the lesser offense of unlawfully causing a fire:
 "Thus [for arson], there must be a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property." (Atkins, supra, 25 Cal.4th at p. 89.)
(3) "On the other hand, the offense of unlawfully causing a fire covers reckless accidents or unintentional fires, which, by definition, is committed by a person who is `aware of and consciously disregards a substantial and unjustifiable risk that his or her act will set fire to, burn, or cause to burn a structure, forest land, or property.' (§§ 450, subd. (f), 452.) For example, such reckless accidents or unintentional fires may include those caused by a person who recklessly lights a match near highly combustible materials." (Atkins, supra, 25 Cal.4th at p. 89, italics added.)
(4) From the statute and from Atkins, we can reach only one conclusion: causing a fire is not arson unless the act that caused the fire was done willfully and maliciously. This pair of adverbs can be rephrased as both "`intentionally'" (Atkins, supra, 25 Cal.4th at p. 85) as well as "maliciously," the latter word meaning with "a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act . . . ." (§ 450, subd. (e); see Atkins, at p. 85.) (5) Here, the act that caused the fire consisted of lighting and throwing a firecracker, and the prosecution presented no evidence that the act was done with a wish to vex, annoy, or injure *1346 anyone or with an intent to do a wrongful act. Without such evidence, we can see no distinction between lighting a firecracker in a heavily wooded area and "recklessly light[ing] a match near highly combustible materials." (Atkins, supra, 25 Cal.4th at p. 89.) In short, evidence of "[a]rson's malice requirement," which "ensures that the act is `done with a design to do an intentional wrongful act'" (id. at p. 88), is absent in this case, and consequently the court's true finding on the arson allegation cannot stand.

DISPOSITION
The judgment is modified (1) to delete the finding sustaining count 1 of the petition (violation of § 451, subd. (c)) and dismissing count 2 (violation of § 452, subd. (c)), and to substitute in lieu thereof the finding that the minor violated section 452, subdivision (c), and (2) to strike the maximum term of confinement set by the juvenile court. As so modified, the judgment is affirmed.
Rubin, Acting P. J., and Flier, J., concurred.
NOTES
[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] All further statutory references are to the Penal Code unless otherwise specified.
[2] The statute does not authorize the juvenile court to specify a maximum term of confinement when the minor is not removed from the physical custody of his parent or guardian (Welf. & Inst. Code, § 726, subd. (c)), so we will order that term stricken from the court's minute order. (In re Matthew A. (2008) 165 Cal.App.4th 537, 541 [81 Cal.Rptr.3d 119].)
[3] Detective Carrillo also testified:

"Q And did [V., the other minor] indicate that after the firework was thrown, it sounded bigger thanthe sound that came out was bigger than they expected?
"A I believe that was the case, yes.
"Q And did he indicate to you . . . when you asked him what he saw that he saw the burningthe fire[,] and did he indicate to you that he or `we got kind of scared because, you know, the fire could have reached us, too'?
"A Yes.
"Q And you, specifically, asked him in the scope of your interview of him, `So you didn't think it would catch on fire because there was a lot of green[?'] Was that a question that you asked him?
"A I believe I was repeating what he was stating to me."
[4] One of the police officers who testified admitted that he played with fireworks when he was a teenager.
[5] Evidence of voluntary intoxication is relevant to negate the existence of a specific intent, but not a general intent. (Atkins, supra, 25 Cal.4th at pp. 81-82.)
[6] "`A crime is characterized as a "general intent" crime when the required mental state entails only an intent to do the act that causes the harm; a crime is characterized as a "specific intent" crime when the required mental state entails an intent to cause the resulting harm.'" (Atkins, supra, 25 Cal.4th at p. 86.)
[7] "[A] defendant who acts maliciously need not possess a specific intent. [Citations.]" (People v. Glover (1991) 233 Cal.App.3d 1476, 1483 [285 Cal.Rptr. 362].)