Filed 10/18/24  P. v. Williams CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CORY JERMAINE WILLIAMS,<br><br>    Defendant and Appellant. | C099191<br><br>(Super. Ct. No. MANCRFE20220009789) |

The trial court found defendant Cory Jermaine Williams guilty of arson of property (Pen. Code, § 451, subd. (d)—count 1)[1]; attempted arson (§ 455—count 2); and drawing, exhibiting, or using a deadly weapon (§ 417, subd. (a)(1)—count 3).  The court found true that defendant had a prior conviction for arson that qualified as a strike.  The court dismissed an additional prior strike allegation pursuant to the parties' agreement.

---

[1]  Undesignated statutory references are to the Penal Code.

1

The trial court sentenced defendant on count 1 to the upper term of three years, doubled to six years for the prior strike. It stayed the punishment on count 2 pursuant to section 654, and sentenced defendant to time served on count 3.

On appeal, defendant argues: (1) his waiver of his right to a jury trial was involuntary because the trial court offered a benefit in exchange for his waiver; (2) his waiver was not knowing and intelligent because the trial court gave him an incomplete advisement of his right to a jury trial; (3) his convictions for attempted arson and arson are not supported by sufficient evidence; and (4) we must strike his conviction for attempted arson under section 954 because it is a lesser included offense of his conviction for arson. We affirm the judgment.

## I. BACKGROUND

On September 29, 2022, Simon was working at a restaurant inside a mall in Tracy. Simon saw defendant with a mop near the back door. Simon went to check the restroom because he smelled smoke. When he returned to the back door, defendant was leaving without the mop. Simon found the mop on fire and leaned on a PG&E panel. He grabbed the mop and stopped the fire. Simon followed defendant outside the mall and told him to stop and that the fire was dangerous for the whole mall. Defendant told Simon it was none of his business. Defendant got a knife out of his backpack and threw it at Simon.

Defendant told a police officer who was investigating the arson that he was walking through the mall with a cigarette when it accidentally lit the mop on fire. He said he took the mop from a janitor basket in the mall and left the mop behind after it caught on fire.

At trial, defendant testified that he had gone to the mall to purchase clothing earlier on September 29, and returned to look for his missing wallet. He said he never had a mop. He denied throwing a knife. He also denied telling the police officer that he accidentally lit a mop on fire.

2

## II.  DISCUSSION

*A.*      *Waiver of a Right to a Jury Trial*

"Under the federal Constitution and our state Constitution, a defendant in a criminal prosecution has a right to a jury trial.  [Citations.]  However, a 'jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel.'  [Citation.]  Waiver must be 'express[ed] in words . . . and will not be implied from a defendant's conduct.'  [Citation.]  Moreover, 'a defendant's waiver of the right to jury trial may not be accepted by the court unless it is knowing and intelligent, that is, " ' "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it," ' " as well as voluntary " ' "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." ' " ' " (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166 (*Sivongxxay*).)  Defendant challenges the court's acceptance of his waiver of his right to a jury trial under these requirements.  First, defendant argues his waiver was involuntary because the trial court offered a benefit in exchange for his waiver.  Second, he argues his waiver was not knowing and intelligent because the trial court gave him an incomplete advisement of his right to a jury trial.  We reject both assertions.

*1.*      *The Waiver Discussion*

Defendant's arguments rely on the following discussion on the record:

"THE COURT:·. . . We had a discussion in chambers and you had a chance to relay the substance of that discussion to your client, right, [defense counsel], to talk to him about the trial process?

"[DEFENSE COUNSEL]:  I talked to him about the offer and that was before we went into chambers, so I haven't talked to him since.

"THE COURT:  Let me give you a second.  Take the time you need there.

"[DEFENSE COUNSEL]:  Yes, Your Honor.

"(Discussion held off the record.)

3

"THE COURT:  So what's our understanding at this point?  [Prosecutor], what's your thought on the trial process?

"[PROSECUTOR]:  It's my understanding that Mr. Williams is going to agree to a court trial.  The People are also going to agree to a court trial.  We're agreeing to a bottom of six years, a max of eight years, eight months.

"THE COURT:  Is that your understanding, [defense counsel]?

"[DEFENSE COUNSEL]:  Yes, Your Honor.

"THE COURT:  We're going to have a court trial.  The bottom is six years, top is eight years, eight months.  That limits your client's exposure.  [¶]  Did you get enough time to talk to Mr. Williams about that process?

"[DEFENSE COUNSEL]:  Yes.

"THE COURT:  Mr. Williams, is that okay with you?  Which means in substance is we're not going to have a jury trial.  You and the People are both waiving a right to a jury trial.  We have jurors, but you guys would waive your right to a jury trial.  You would agree to have a court trial and I'd be the judge for that and your exposure is limited.  The smallest sentence you could get is six years.  The greatest sentence is eight years and eight months.  [¶]  The People would give up the right to seek a life sentence; is that correct?

"[PROSECUTOR]:  That's correct.

"THE COURT:  Do you understand that, sir?

"THE DEFENDANT:  Yes.

"[DEFENSE COUNSEL]:  He does understand that if he's found not guilty --

"THE COURT:  If you're found not guilty, there's no time at all.  I don't know the evidence.  I don't know the witnesses.  We're going to be doing this over the next few days.  [¶]  Are the People willing to waive a jury trial?

"[PROSECUTOR]:  Yes, Your Honor.

"THE COURT:  Agree to a court trial?

4

"[PROSECUTOR]:  Yes.

"THE COURT:  [Defense counsel], that's okay with you?

"[DEFENSE COUNSEL]:  Yes.

"THE COURT:  You agree to waive a jury trial, right?

"[DEFENSE COUNSEL]:  That's right.

"THE COURT:  Mr. Williams, you agree to waive a jury trial?

"THE DEFENDANT:  Yes, Your Honor.

"THE COURT:  We're having a court trial.  We're going to have the witnesses come in.  We're going to see them.  We're going to talk to them.  If convicted, the lowest sentence is six years, but the highest is eight years and eight months.  At this point you wouldn't be looking at a life sentence, so you have a range.  Okay.

"THE DEFENDANT:  Yes, sir."

2.      *Voluntary of Waiver*

Defendant, relying on *People v. Collins* (2001) 26 Cal.4th 297 (*Collins*), argues his waiver was not made voluntarily because it was induced by the trial court's offer to reward defendant's waiver with a sentencing cap.  We reject defendant's interpretation of the record of the trial court's attempt to evaluate the voluntariness of his waiver.

In *Collins*, the trial court "acted in a manner that was at odds with its judicial obligation to remain neutral and detached in evaluating the voluntariness of a waiver." (*Collins, supra*, 26 Cal.4th at p. 309.)  Specifically, "upon learning that defendant might waive jury trial, the court had informed defense counsel that 'there might well be a benefit in it,' because 'just by having waived jury' and thus not taking two weeks' time to try the case, 'that has some effect on the court.' " (*Ibid*.)  The court did not specify the nature of the benefit, but said, "by waiving jury, you are getting some benefit."  (*Id*. at p. 302.)  Our Supreme Court characterized the trial court's remarks as effectively an "offer[]" to reward defendant for refraining from the exercise of a constitutional right," made with the objective of "obtain[ing] defendant's waiver of a fundamental constitutional right

5

that, by itself (when defendant elects to go to trial), is not subject to negotiation *by the court*." (*Id.* at p. 309, italics added.) Further, "[t]he manner in which the trial court induced defendant to waive his right to jury trial rendered that waiver involuntary." (*Id.* at p. 312.) However, the *Collins* court noted that benefits that are offered to a defendant *by a prosecutor* in the course of plea negotiations, in which constitutional rights are relinquished, do not necessarily render the waiver of those constitutional rights involuntary or otherwise unconstitutional: "We do not intend by our holding today to call into question the well-established practice in which the *prosecutor* and the defendant negotiate a plea of guilty or nolo contendere [citation], a practice that obviously involves a relinquishment of the constitutional rights attending a trial, including the right to trial by jury." (*Id.* at p. 309, fn. 4.)

Here, contrary to defendant's suggestion, the offer did not come from the judge. Indeed, the only reasonable inference from the record and the statement that defense counsel discussed the offer with his client "*before* we went into chambers" is that the offer came from one of the parties. (Italics added.) Indeed, at sentencing, the court and the parties discussed what the parties had agreed to prior to trial and how they had expected to arrive at an eight-year sentence. The judge, who was the same judge who had accepted the waiver stated, "I only got it for the trial. When I got it, the agreement that was set for the trial was -- the Court trial was everybody waived a jury trial and instead of getting life, you get a low sentence would be six years. That's the bottom. Eight would be the top." The judge explained the sentence it was imposing "respects the agreement between the parties when you came here for the Court trial that it would be no lower than six, but no higher than eight." We conclude this case is not akin to *Collins* because here the trial court did not offer defendant anything in exchange for his waiver. Further, the trial court "remain[ed] neutral and detached in evaluating the voluntariness of the waiver." (*Collins, supra*, 26 Cal.4th at p. 309.) It asked the parties about their

6

"understanding" of their agreement and, as we will discuss next, asked questions aimed at understanding whether defendant's waiver was knowing and intelligent.

### 3. *Knowing and Intelligent Waiver*

Our Supreme Court "has not mandated any specific method for determining whether a defendant has made a knowing and intelligent waiver of a jury trial in favor of a bench trial. We instead examine the totality of the circumstances." (*Sivongxxay, supra*, 3 Cal.5th at p. 167.)

Our Supreme Court in *Sivongxxay* "offer[ed] some general guidance to help ensure that a defendant's jury trial waiver is knowing and intelligent, and to facilitate the resolution of a challenge to a jury waiver on appeal." (*Sivongxxay, supra*, 3 Cal.5th at p. 169.) It "recommend[s] that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Ibid*.) Defendant argues his waiver was not knowing and intelligent because the trial court did not advise him of any of these four recommended facts. "[A] trial court's adaptation of or departure from the recommended colloquy in an individual case will not necessarily render an ensuing jury waiver invalid." (*Id*. at p. 170.) For instance, "under the totality of the circumstances standard, the presence or absence of a reference in a colloquy to [the third] attribute of a jury trial, or to the impartiality requirement, is not necessarily determinative of whether a waiver meets constitutional standards." (*Id*. at p. 168.) It appears the trial court did advise defendant of the fourth fact by explaining, "You would agree to have a court trial and I'd be the judge for that." The trial court explained that jurors were available, but by waiving his right to a jury trial, defendant would be agreeing to have a court trial where the judge would decide the case. Further, as the People note, the record reflects defendant had

previously been advised of the first and third facts and acknowledged he fully understood that he had "the right to a [public] jury trial by twelve impartial citizens who must all agree on your guilt before you can be found guilty." This record of previous advisements renders this case meaningfully different from those on which defendant relies. (See, e.g., *People v. McCray* (2023) 98 Cal.App.5th 260, 273-277; *People v. Jones* (2018) 26 Cal.App.5th 420, 436 ["Nothing in the record suggests that Jones was aware that a jury is comprised of individuals drawn from the community"]; *People v. Blancett* (2017) 15 Cal.App.5th 1200, 1206 ["we have no record of the advisements he received before entering that plea"].)

The court in *Sivongxxay* "also recommend[ed] that the trial judge take additional steps as appropriate to ensure, on the record, that the defendant comprehends what the jury trial right entails. A trial judge may do so in any number of ways—among them, by asking whether the defendant had an adequate opportunity to discuss the decision with his or her attorney, by asking whether counsel explained to the defendant the fundamental differences between a jury trial and a bench trial, or by asking the defendant directly if he or she understands or has any questions about the right being waived. Ultimately, a court must consider the defendant's individual circumstances and exercise judgment in deciding how best to ensure that a particular defendant who purports to waive a jury trial does so knowingly and intelligently." (*Sivongxxay, supra*, 3 Cal.5th at pp. 169-170.) Defendant acknowledges the court asked his counsel if he had enough time to discuss the trial process with him, but argues the court did not ask the same of him. The court gave defense counsel time to talk to defendant about the trial process, summarized the agreement to waive a jury trial, and then asked defendant if he understood, to which he answered affirmatively. The court took steps to ensure defendant "comprehend[ed] what the jury trial right entails" (*id*. at p. 169) and the meaning of his waiver, and the totality of the circumstances shows defendant made a knowing and intelligent waiver.

8

*B.*     *Sufficiency of the Evidence*

Defendant argues his convictions for counts 1 and 2 were not supported by sufficient evidence.

"To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Additionally, "[w]here the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal." (*Id*. at p. 358.)

*1.*     *Arson*

With respect to count 1, defendant was convicted of arson of property—the mop. "[A]rson of property does not include one burning or causing to be burned his or her own personal property unless there is an intent to defraud or there is injury to another person or another person's structure, forest land, or property." (§ 451, subd. (d).) Defendant

9

argues the evidence was insufficient to establish the mop was not his property. We disagree. Simon testified the mop was "for the mall usage" and janitors use it. Simon also said he "recognize[d] the mop [wa]s from the company, the logo." He further testified the mop was "brand new." Defendant initially told law enforcement he took the mop from a janitor basket in the mall. The evidence indicates defendant did not work at the mall. Defendant suggests that because the evidence did not preclude the possibility he possessed a new mop with the same logo and brought it to the mall, the evidence was insufficient to support his conviction. We disagree. It was a reasonable deduction from the evidence, and not mere speculation, for the court to infer that the mop defendant lit on fire did not belong to him.

### 2. *Attempted Arson*

With respect to count 2, defendant was convicted of attempted arson of the PG&E panel under section 455.

Section 455 provides:

"(a) Any person who willfully and maliciously attempts to set fire to or attempts to burn or to aid, counsel or procure the burning of any structure, forest land or property, or who commits any act preliminary thereto, or in furtherance thereof, is punishable by imprisonment in the state prison for 16 months, two or three years.

"(b) The placing or distributing of any flammable, explosive or combustible material or substance, or any device in or about any structure, forest land or property in an arrangement or preparation with intent to eventually willfully and maliciously set fire to or burn same, or to procure the setting fire to or burning of the same shall, for the purposes of this act constitute an attempt to burn such structure, forest land or property."

Simon initially agreed with the prosecutor that he saw defendant holding the mop up to the PG&E panel and trying to catch it on fire. Later, Simon said that when he returned from the bathroom and saw the mop leaned against the PG&E panel on fire, he could not see anyone around the mop but saw defendant running out of the exit.

10

Defendant argues the evidence was therefore insufficient to show he intended to set fire to any property other than the mop. He notes the PG&E panel was made of metal and defendant did not add any accelerant. While these facts may have made his attempt less likely to succeed, we agree with the People that the placement of the mop suggests it was reasonable for the court to conclude defendant's intent was to burn the PG&E panel. The photographic evidence of damage to the panel supports a reasonable inference that the burning end of the mop was placed up and against the middle of the panel intentionally to burn the panel.

## C. *Attempted Arson Is Not a Lesser Included Offense of Arson*

Defendant contends we must strike his conviction for attempted arson under section 954 because it is a lesser included offense of his conviction for arson.

Section 954 provides, in relevant part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts . . . . The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged."

Here, the court stayed sentence on defendant's conviction for attempted arson under section 654 based on its determination that the attempted arson of the PG&E panel and arson of the mop were one course of conduct. "While section 654 prohibits multiple *punishment*, it is generally permissible to *convict* a defendant of multiple charges arising from a single act or course of conduct. (§ 954; [citation].) However, a 'judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses.' " (*People v. Sanders* (2012) 55 Cal.4th 731, 736.) Therefore, "[w]hen a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on

11

the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed." (*Ibid*.)

"In deciding whether multiple convictions are barred because one offense is a lesser included offense of the other, we apply the 'elements' test." (*People v. Cady* (2016) 7 Cal.App.5th 134, 140.) " 'Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former.' [Citation.] In other words, ' "[i]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former." ' " (*People v. Sanders, supra*, 55 Cal.4th at p. 737.) In applying the elements test, "we do not consider the underlying facts of the case or the language of the accusatory pleading." (*Id.* at p. 739.) The People offered no response to defendant's assertion that attempted arson is a lesser included offense of arson. Rather, the People argue separate convictions are proper because they are based on separate acts without addressing the trial court's conclusion that the convictions were based on the same course of conduct.

Nonetheless, defendant has failed to demonstrate that attempted arson is a lesser included offense of arson. Attempt is not a lesser included offense of a completed crime "where the attempted offense includes a particularized intent that goes beyond what is required by the completed offense." (*People v. Bailey* (2012) 54 Cal.4th 740, 753.) Such is the case here.

"A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property." (§ 451.) "[T]here must be a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property." (*People v. Atkins* (2001) 25 Cal.4th 76, 89.) However, "the specific intent to set fire to or burn or cause to be burned the relevant structure or forest land is not an element of

12

arson." (*Id*. at p. 84.)  It is, however, an element of attempted arson under section 455. (*People v. Rubino* (2017) 18 Cal.App.5th 407, 412; accord *Atkins, supra*, at p. 87 [explaining that section 455 provides "placement of flammable material in or about structure is an attempt only when done with intent to eventually willfully and maliciously set fire to it"].)  Thus, we reject defendant's assertion that one cannot commit arson without also committing attempted arson.  As such, we will not strike his conviction for attempted arson under section 954.

### III.  DISPOSITION

The judgment is affirmed.


/S/

_____

RENNER, J.


We concur:


/S/

_____

EARL, P. J.


/S/

_____

BOULWARE EURIE, J.

13