Filed 12/6/24  P. v. Lenhart CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SETH LENHART,<br><br>    Defendant and Appellant. | F086689<br><br>(Super. Ct. No. BF192849A)<br><br><br>**MODIFICATION OF OPINION (NO CHANGE IN JUDGMENT)** |

**THE COURT:**

It is hereby ordered that the opinion filed herein on November 26, 2024, be modified as follows:

1.  On page 2, the last sentence of the last full paragraph beginning "The court also imposed and stayed," the words "an eight month" are replaced with "a one year, four-month" so the sentence reads:

    The court also imposed and stayed under section 654 a one year, four-month term on count 3 (evading while driving wrong way).

2.  On page 2, footnote 4 is deleted, requiring the renumbering of all subsequent footnotes.

3.  On page 17, footnote 10, beginning "Recall that the," the words "eight month" are replaced with "one year, four-month" so the sentence reads:

Recall that the one year, four-month term imposed for the evading conviction in count 3 was stayed under section 654.

4. On page 18, footnote 11, beginning "Our decision on this issue", the word "his" is deleted so the sentence now reads:

Our decision on this issue moots Lenhart's other sentencing issue, which is that he is entitled to a resentencing because the trial court did not understand that the low term was the presumptive term under newly enacted section 1170, subdivision (b)(6).

Except for the modifications set forth, the opinion previously filed remains unchanged.

This modification does not effect a change in the judgment.

                                                          SNAUFFER, J.
WE CONCUR:


HILL, P. J.


LEVY, J.

Filed 11/26/24  P. v. Lenhart CA5 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SETH LENHART,<br><br>    Defendant and Appellant. | F086689<br><br>(Super. Ct. No. BF192849A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Michael Caves, Judge.

Peggy A. Headley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, and Joseph Penney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Seth Lenhart was convicted of several crimes after he carjacked a man, led police on a chase, and crashed the victim's car.  He was sentenced to an aggregate term of six years, four months in prison.  The parties agree, as do we, that the sentence

must be vacated, and the matter must be remanded for a full resentencing because the trial court failed to properly apply Penal Code section 654.[1]  In all other respects, the judgment is affirmed.

## STATEMENT OF THE CASE

An information charged Lenhart with carjacking (§ 215, subd. (a); count 1), evading a pursuing peace officer (Veh. Code, § 2800.2; count 2), evading a pursuing peace officer by driving in the opposite direction of traffic (Veh. Code, § 2800.4; count 3), vandalism causing damage of $400 or more (§ 594, subd. (b)(1); count 4), and misdemeanor elder abuse (§ 368, subd. (c); count 5).

The information also alleged as to counts 1 through 4 that there existed aggravating factors under California Rules of Court, rule 4.421,[2] but the information did not specify the factors.  During trial, the information was orally amended to specify the aggravating factors were those listed in rule 4.421(a)(1) and (a)(3).[3]

The jury convicted Lenhart on counts 1 through 4 but acquitted him on count 5.  In a bifurcated court trial, the trial court found both aggravating factors true.

The trial court sentenced Lenhart to a total term of six years, four months in prison.  The court imposed the middle term of five years on count 1 (carjacking), a consecutive eight-month term on count 2 (evading), and a consecutive eight-month term

---

[1] Undesignated statutory references are to the Penal Code.

[2] Further references to rules are to the California Rules of Court.

[3] Rule 4.421(a)(1) lists as a factor relating to the crime:  "The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness[.]"

Rule 4.421(a)(3) lists as a factor relating to the crime:  "The victim was particularly vulnerable[.]"

on count 4 (vandalism). The court also imposed and stayed under section 654 an eight-month term on count 3 (evading while driving wrong way).[4]

## FACTS

### I. The carjacking

On January 7, 2023, at around 7:20 p.m., V., a 73-year-old man, was driving in the area of Beardsley and North Chester Avenues in Bakersfield. He was in his mother's 1998 Saturn sedan. He stopped at the red light where those avenues intersect and put the car in park because the light takes a long time to change.

Lenhart was standing at the corner, "[r]ambling and raising hell and cussing and screaming." V. testified he did not recall very much about what happened to him at that street corner. He explained he was traumatized by what happened, and his mind must have "blanked … out" the incident.[5] But he remembered that a man, whom he later identified as Lenhart, drove off in V.'s car and was laughing. He remembered never giving Lenhart permission to take his car, and he stated he did not know Lenhart before the incident. V. testified he remembered speaking with police at the intersection but could not recall what he said or why the police were there. The incident left him sleepless for days and "scared to death."

V. told a deputy sheriff that after he spotted Lenhart at the corner, Lenhart appeared to walk off, but suddenly appeared at V.'s car. Lenhart opened the driver's door and pulled V. from the car. V. tried fighting Lenhart to take back control of the car, but Lenhart said he had a gun, so V. backed off. V. told the deputy he did not have any weapons, and the deputy did not see any weapons on or near V.

---

[4] The abstract of judgment incorrectly notes that the term imposed on this count was one year, four months.

[5] V. testified on May 26, 2023. The jury was presented police officer bodycam footage showing V.'s initial reports to police.

In response to questioning from the prosecutor, V. testified that he called defense counsel after the preliminary hearing.[6] He explained that defense counsel "scared the hell out of [him]" during the hearing by asking him if he hit Lenhart in the head with a bat. He was scared he could get jailed for assault. He unsuccessfully tried reaching the district attorney's office, then called defense counsel and offered to drop the carjacking charge if counsel would "quit the bat thing." He testified at trial that he does not recall hitting Lenhart with a bat and stated that he did not engage with or provoke Lenhart; also, he never had a bat in his car.

## II.    Evading offenses and vandalism

Around 7:25 p.m. the same day of the carjacking, a deputy sheriff received a report of a carjacking involving a 1998 Saturn in the area of North Chester and Beardsley Avenues. The deputy saw a car matching the description, made a U-turn, and began following the Saturn, which was proceeding normally.

As the Saturn approached the Kern County Sheriff's Office headquarters, the Saturn's driver turned on his right turn signal as if preparing to turn into the headquarters parking lot. The deputy activated the solid red forward-facing lights and the red and blue flashing lights on his marked patrol car to initiate a traffic stop. As soon as he activated his lights, the Saturn sped away down the road. The deputy activated his sirens. The Saturn then entered the opposing lanes of traffic and reached speeds of over 70 miles per hour. The Saturn then went back into the proper lanes. As the Saturn approached a bridge overpass, going about 70 miles per hour, the driver "immediately lost control" and swerved left to right before colliding into a pillar of the overpass on the driver's side. The total distance of the pursuit, from the sheriff's headquarters to the crash, was about .8 miles.

---

[6] The preliminary hearing took place on February 9, 2023.

V. was taken to the crash site and saw his car had been destroyed. V. testified the car was worth around $4,000 to $5,000. V. identified Lenhart at the scene as the person who took his car.

## III. Defense

Lenhart, who was 21 years old at the time of the offenses, testified in his own defense. He was homeless and slept under a tree near the intersection where the incident with V. occurred. His testimony differed significantly from V.'s version of events.

On January 7, 2023, Lenhart was walking to a park to play basketball. He heard footsteps from behind, turned around, and was hit in the head by V. with an aluminum baseball bat. He was struck on the left of his face, including on the corner of his left eye. He did not know who V. was and claimed the attack was unprovoked. The strike caused him to drop his basketball. He told V. he was going to get his basketball, but he was scared and panicked, so he walked across the street and "jumped" into V.'s car instead. The driver's door was open. V. did not try to hit him again, "but it looked like the intention was there." Once he was in the car, V. grabbed ahold of his foot and tried pulling him out of the car. V. said, "Get the fuck out of my car." Lenhart yanked his foot free and drove away.

Lenhart stated he only vaguely remembered speaking with police or being involved in a crash. On cross-examination, he stated he was scared while driving V.'s car before the deputy attempted to pull him over because he did not know how much trouble he was going to be in for being in someone else's car. He also claimed he was driving to sheriff's headquarters because he was scared, had just been assaulted, and wanted to "make amends to see what was the next step from there." When he saw the deputy's flashing lights, he was "pretty scared, so [he] made an attempt to flee." He said he did not want to stop for the deputy because he has PTSD, was scared, and "didn't know what would happen." He said, "[A]nytime somebody is lit up they're in trouble."

**DISCUSSION**

## I. Prosecutorial misconduct

Lenhart asserts that the prosecutor misstated the reasonable doubt standard three times during closing argument in a manner that reduced the prosecution's burden of proof, thereby violating his state and federal rights to due process and a fair trial. He contends the prosecutor's misstatements suggested the burden is less rigorous than the law requires and shifted the burden to the defense. We disagree.

### A. Reasonable doubt standard

A criminal defendant is presumed innocent, and it is the prosecution's burden to prove them guilty beyond a reasonable doubt. (§ 1096; *Victor v. Nebraska* (1994) 511 U.S. 1, 5.) Section 1096 defines reasonable doubt: " 'It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.' "

CALCRIM No. 220, which was given to Lenhart's jury, describes the presumption of innocence and the prosecutor's burden of proving guilt beyond a reasonable doubt.[7]

---

[7] Specifically, it provided: "The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant Seth Lenhart just because he has been arrested, charged with a crime or brought to trial. [¶] A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt. [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."

6.

## B. Basic law on prosecutorial misconduct

"A prosecutor's misconduct violates the Fourteenth Amendment to the federal Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.] In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' [Citation.] A prosecutor's misconduct 'that does not render a criminal trial fundamentally unfair' violates California law 'only if it involves " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' " (*People v. Harrison* (2005) 35 Cal.4th 208, 242.)

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667 (*Centeno*).) The court must consider the challenged statements in the context of the argument as a whole to make its determination. (*People v. Cowan* (2017) 8 Cal.App.5th 1152, 1159 (*Cowan*).)

"[I]t is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements[.]" (*People v. Marshall* (1996) 13 Cal.4th 799, 831; *Centeno, supra,* 60 Cal.4th at pp. 665–667.)

A determination of bad faith or wrongful intent by the prosecutor is not required to establish prosecutorial misconduct in argument to the jury. (*People v. Crew* (2003) 31 Cal.4th 822, 839; *People v. Hill* (1998) 17 Cal.4th 800, 822–823 & fn. 1 (*Hill*).) "[T]he term prosecutorial 'misconduct' is somewhat of a misnomer to the extent that it

suggests a prosecutor must act with a culpable state of mind. A more apt description of the transgression is prosecutorial error." (*Hill*, at p. 823, fn. 1.)

"Thus, the rubric of prosecutorial misconduct embraces a prosecutor's inadvertent and negligent objectionable statements to the jury as well as misstatements involving mental states more culpable than negligence." (*People v. Jasso* (2012) 211 Cal.App.4th 1354, 1362.) " ' "What is crucial to a claim of prosecutorial misconduct is not the good faith *vel non* of the prosecutor, but the potential injury to the defendant." ' " (*People v. Davis* (1995) 10 Cal.4th 463, 516; *People v. Clair* (1992) 2 Cal.4th 629, 661.)

### C.   Forfeiture

Lenhart did not object to any of the prosecutor's comments. To the extent any of the comments were objectionable, they could easily have been cured by an admonition from the judge. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1002.) Accordingly, Lenhart forfeited his claims of prosecutorial misconduct. (*People v. Huggins* (2006) 38 Cal.4th 175, 205.)

Anticipating this result, Lenhart urges us to exercise our discretion to address this issue on the merits to avoid an ineffective assistance of counsel claim. In the alternative, he asserts his counsel rendered ineffective assistance for failing to object and requesting an admonition. As both parties have addressed the merits of their respective claims in their briefing, we elect to address them on the merits as if Lenhart's claims were preserved.

### D.   Analysis

Lenhart contends the prosecutor misstated the law on the reasonable doubt standard in three instances and did so in a manner that improperly reduced the prosecution's burden of proof and shifted the burden to the defense. We address each instance separately.

### 1. First instance

Lenhart first asserts the prosecutor committed misconduct when he told the jury: "What's key is *whether the doubt has been proven beyond reasonable doubt*. Is the doubt you have reasonable or unreasonable? If it is reasonable, then you must find that the case has not been proven beyond a reasonable doubt." (Italics added.) Lenhart contends the italicized text misstates the law by "flipp[ing] the prosecution's burden to prove guilt beyond a reasonable doubt on its head." He contends this statement "told the jury that doubt about the defendant's guilt had to be proven beyond a reasonable doubt."

To be sure, the italicized text misstates the law. But we agree with the People that, when viewed in context, the jury would have viewed the statement as a mistake—a slip of the tongue. This is because shortly before the misstatement, the prosecutor said, "Now, we all know that, as I have stated from the very start, the People, the prosecution, has the burden of proving the case beyond a reasonable doubt." And the prosecutor correctly reiterated his burden of proving Lenhart's guilt beyond a reasonable throughout his discussion of the various counts. For example, the prosecutor said at the end of his methodical discussion of the elements of carjacking: "So all five elements for carjacking are met and proven beyond a reasonable doubt, which means that you must find that for count one, a carjacking, the defendant is guilty." He also said shortly later about the carjacking charge: "And that's why all of the elements for count one are met, and the evidence proves beyond a reasonable doubt that the defendant is guilty of count one, carjacking." The prosecutor similarly said after his discussion of the vandalism elements, "So all of the elements for count four are met, and the evidence proves beyond a reasonable doubt that the defendant is guilty of vandalism of over 400 dollars."

Lenhart's trial counsel also correctly discussed the reasonable doubt standard. For example, in the beginning of his closing argument, counsel said, "Going to the burden of proof, two things with beyond a reasonable doubt. Well, this high, high burden. Obviously, the first thing is that—excuse me, three things, because all good things come

9.

in threes.  The first thing is it's the People's burden.  Like we went over in voir dire, I don't have to prove anything to you.  It's the People's burden."

The prosecutor began his rebuttal, "Good morning, ladies and gentlemen.  All the evidence that has been provided proves that the defendant is guilty beyond a reasonable doubt."  And towards the end of his rebuttal, the prosecutor said, "The truth is that the evidence proves beyond a reasonable doubt that the defendant is guilty of all five counts."

Along with the correct statements of both counsel, the court correctly instructed the jurors on the presumption of innocence, the reasonable doubt standard, and the prosecutor's burden of proof.  Also, many of the instructions given to the jury reiterated that the prosecution bears the burden of proof beyond a reasonable doubt.  (See, e.g., CALCRIM Nos. 224, 225, 372, 831, 1650, 2181, 2900, 2901.)

In the context of the prosecutions' entire closing argument, it is clear the prosecutor misspoke and was not trying to tell the jury that doubt about Lenhart's guilt had to be proven beyond a reasonable doubt, and we are confident this was the jury's understanding.  We find it entirely unlikely the jurors instead gave weight to the prosecutor's misstatement and ignored the many other (correct) statements and instructions about the reasonable doubt standard that they heard from the prosecutor, defense counsel, and the court.  We thus conclude there was no " 'reasonable likelihood the jury understood or applied the [misstatement] in an improper or erroneous manner.' " (*Centeno, supra,* 60 Cal.4th at p. 667.)

### 2.    *Second incident*

Lenhart also asserts prosecutorial misconduct when the prosecutor told the jury, "We know what the reasonable account of what happened is."  He does not provide the context in which this statement was made, but he contends the statement "improperly diluted the reasonable doubt standard by equating it with what was reasonable and unreasonable" and "undermined the presumption of innocence."

10.

The prosecutor made this statement during his discussion of the necessity defense, which the jury was instructed with regarding the carjacking count. The jury was instructed:

"The defendant is not guilty of carjacking if he acted because of a legal necessity. In order to establish this defense, *the defendant must prove* that:

"1. He acted in an emergency to prevent significant bodily harm or evil to himself;

"2. He had no adequate legal alternative;

"3. The defendant's acts did not create a greater danger than the one avoided;

"4. When the defendant acted, he actually believed that the act was necessary to prevent the threatened harm or evil;

"5. A reasonable person would also have believed that the act was necessary under the circumstances; and

"6. The defendant did not substantially contribute to the emergency.

"*The defendant has the burden of proving this defense by a preponderance of the evidence.* This is a different standard than proof beyond a reasonable doubt. To meet the burden of proof by a preponderance of the evidence, the defendant must prove that it is more likely than not that each of the six listed items is true." (Italics added.)

The prosecutor made the challenged statement while discussing the second element from the necessity instruction. The prosecutor argued it was unreasonable to think that Lenhart had no alternative—in his effort to get away from V. after being struck with a bat—besides getting into V.'s car and driving away. The prosecutor argued Lenhart, by his own testimony, could have simply walked away from V. to avoid being further attacked.[8]

---

[8] Lenhart testified that "walking away was enough to get [him] away from [V.]."

11.

Since Lenhart—not the prosecution—had the burden of proving the necessity defense by a preponderance of the evidence, it does not follow that the challenged statement by the prosecutor "improperly diluted the reasonable doubt standard." The statement was not connected to the reasonable doubt standard, nor does Lenhart explain how the statement undermined the presumption of innocence.

In any event, it is proper for the prosecutor to ask the jury to " 'decide what is reasonable to believe versus unreasonable to believe' and to 'accept the reasonable and reject the unreasonable.' " (*People v. Romero* (2008) 44 Cal.4th 386, 416 (*Romero*).) The prosecutor's statement implied that Lenhart's story was unreasonable and thus the jury should reject it, which was proper argument.

### 3. *Third incident*

The prosecutor ended his initial closing argument with:

"When you have two stories, one is reasonable and the other is unreasonable, as you'll read in the jury instructions, *you cannot consider the unreasonable story*. You can *only look at the reasonable evidence*.

"With that, I ask that you find the defendant guilty of all five counts. Thank you." (Italics added.)

He contends the italicized text "improperly diluted the reasonable doubt standard by equating it with what was reasonable and unreasonable." That is to say, he asserts the prosecutor's words suggested that a reasonable account of the evidence satisfies the prosecutor's burden of proof. We disagree.

Our Supreme Court has held that "it is error for the prosecutor to suggest that a 'reasonable' account of the evidence satisfies the prosecutor's burden of proof." (*Centeno, supra,* 60 Cal.4th at p. 672, italics omitted.) Yet it is proper to urge the jury to consider all the evidence before it, "to urge that a jury may be convinced beyond a reasonable doubt even in the face of conflicting, incomplete, or partially inaccurate accounts," and "to argue that the jury may reject impossible or unreasonable interpretations of the evidence and to so characterize a defense theory." (*Ibid.*) It is also

12.

proper for the prosecutor to ask the jury to " 'decide what is reasonable to believe versus unreasonable to believe' and to 'accept the reasonable and reject the unreasonable.' " (*Romero, supra,* 44 Cal.4th at p. 416.)  And as the jury was instructed in this case by CALCRIM No. 226, jurors may evaluate the reasonableness of a witness's testimony in judging their credibility.[9]

Lenhart compares the prosecutor's statements here to those involved in *Centeno, supra,* 60 Cal.4th 659.  There, the prosecutor told the jury: " '[Y]our decision has … to be a reasonable account….  [Y]ou need to look at the entire picture, not one piece of evidence, not one witness … to determine if the case has been proven beyond a reasonable doubt.' " (*Id.* at p. 671.)  Then the prosecutor compared the prosecution and defense evidence and asked the jury, " 'Is it reasonable to believe that the defendant is being setup … or [that] he['s] good for it?  That is what is reasonable.  He's good for it.' " (*Id.* at p. 672, italics omitted.)  Our high court held this argument conflated reasonable inferences from the evidence with the prosecution's obligation to prove guilt beyond reasonable doubt, impermissibly leaving the jury "with the impression that so long as her interpretation of the evidence was reasonable,"  the prosecution had met its burden.  (*Id.* at p. 672.)

Here, unlike in *Centeno*, the prosecutor did not suggest the jury could find Lenhart guilty based on a "reasonable" account of the evidence.  Instead, the prosecutor's statement properly urged the jury to " 'decide what is reasonable to believe versus unreasonable to believe' and to 'accept the reasonable and reject the unreasonable' " in evaluating the evidence before it.  (*Romero, supra,* 44 Cal.4th at p. 416.)  We are confident the jury understood that the prosecutor was arguing that his view of the

---

[9] CALCRIM No. 226 instructs:  "In evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony.  Among the factors that you may consider are:  [¶] … [¶]  How reasonable is the testimony when you consider all the other evidence in the case?"

13.

evidence was the only reasonable view, but that it remained the jury's task to decide whether the evidence showed Lenhart was guilty of the charged offenses beyond a reasonable doubt.

Lenhart also cites *People v. Meneses* (2019) 41 Cal.App.5th 63 (*Meneses*) and *State v. Sappington* (2007) 285 Kan. 176 (*Sappington*), both of which are distinguishable. In *Meneses*, the appellate court held the prosecutor misstated the law by stating: "You must reject any unreasonable interpretation [of the evidence]. And if there's one reasonable interpretation, you must convict." (*Meneses*, at p. 69, italics omitted.) Again, the prosecutor here did not suggest the jury must convict if there is only one reasonable view of the evidence. In *Sappington*, the Supreme Court of Kansas decided the prosecutor misstated the burden of proof when they stated: "Remember our test is beyond a reasonable doubt. And is it reasonable given that evidence that we have that [the defendant] is the one that did this? And I suggest to you the answer is, yes, it is." (*Sappington*, at p. 1113.) Once again, the prosecutor here did not suggest that the jury may convict on a reasonable account of the evidence. These cases are inapt.

The prosecutor's statement was proper argument.

## II. Sufficiency of the evidence

Lenhart next argues that the evidence was insufficient to support the vandalism conviction because there was no evidence he intended to damage V.'s car. We reject his argument. As we will explain, vandalism is a general intent crime, which means that Lenhart can be guilty of the crime even if he did not intend to damage the car.

In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951.)

14.

To convict Lenhart of felony vandalism, the prosecution had to prove: (1) he maliciously damaged or destroyed personal property; and (2) he did not own the property. (§ 594, subd. (a); see CALCRIM No. 2900.)

"A person acts maliciously *either* when acting with 'a wish to vex, annoy, or injure another person' *or* with the 'intent to do a wrongful act.' " (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1282 (*Kurtenbach*), quoting § 7, subd. (b)(4).) The first type of malice, "malice in fact," "consists of actual ill will or intent to injure." (*In re V.V.* (2011) 51 Cal.4th 1020, 1028.) The second type of malice is "malice in law," which "may be 'presumed' or 'implied' from the intentional doing of the act without justification or excuse or mitigating circumstances." (*Ibid.*)

"[T]he term 'malicious,' as used in section 7, subdivision [(b)(4)], does not transform an offense into a specific intent crime." (*People v. Atkins* (2001) 25 Cal.4th 76, 85–86.) Instead, the use of the term "malice" or "maliciously" in a penal statute is ordinarily an expression of a general criminal intent. (See *ibid.* [explaining difference between general and specific intent in context of arson statute].) Under these principles, vandalism is a general intent crime. (*People v. Moore* (2018) 19 Cal.App.5th 889, 894–895.) The "malice requirement ensures that the act is 'done with a design to do an intentional wrongful act … without any legal justification, excuse or claim of right.' " (*Atkins,* at p. 88.) Requiring evidence that the defendant acted with malice ensures the proscribed act was "a deliberate and intentional act, as distinguished from an accident or unintentional … act[.]" (*Ibid.*)

Since vandalism is a general intent crime, it can be proven by showing the defendant intended to do the act that caused the resulting harm. Here, there is substantial evidence that Lenhart intentionally evaded police, and in the course of his evasive driving he crashed V.'s car. That he accidentally crashed the car is immaterial. Lenhart admitted during his testimony that he saw the deputy's flashing lights and "made an attempt to

15.

flee." The evasive driving was clearly intentional and indisputably a "wrongful act" under the "malice in law" definition. Sufficient evidence supports the conviction.

## III. Jury instructions

Lenhart asserts the trial court erred in denying his request that the jury be instructed on the theory of accident regarding the vandalism count. We find no error as substantial evidence did not warrant giving an accident instruction.

Section 26 provides a statutory defense for acts that would otherwise be criminal but are committed accidentally: "All persons are capable of committing crimes except those belonging to the following classes: [¶] … [¶] Five—Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence." Accident is not an affirmative defense; "[i]nstead, it is a request for an instruction that negates the intent element of [a crime]." (*People v. Gonzalez* (2018) 5 Cal.5th 186, 199, fn. 3.)

CALCRIM No. 3404—which is the instruction Lenhart requested—provides an instruction on the defense of accident, explaining a defendant is not guilty of a charged crime if he or she acted "without the intent required for that crime, but acted instead accidentally." (Accord, *People v. Anderson* (2011) 51 Cal.4th 968, 996 (*Anderson*).) An instruction on the defense of accident is a pinpoint instruction, which " 'relate[s] particular facts to a legal issue in the case or "pinpoint[s]" the crux of a defendant's case, such as mistaken identification or alibi.' " (*People v. Jennings* (2010) 50 Cal.4th 616, 675 (*Jennings*).) The trial court does not have a sua sponte obligation to give a pinpoint instruction on the defense of accident. (*Anderson*, at pp. 996–997; *Jennings*, at p. 675.) But an instruction on accident is " 'required to be given upon request when there is evidence supportive of the theory.' " (*Jennings*, at p. 675.)

The court must " 'give a requested instruction concerning a defense only if there is substantial evidence to support the defense.' [Citations.] '[A] trial judge … has the authority to refuse requested instructions on a defense theory for which there is no

supporting evidence.' " (*People v. Larsen* (2012) 205 Cal.App.4th 810, 823.) "Substantial evidence in this context ' "is 'evidence sufficient "to deserve consideration by the jury," not "whenever *any* evidence is presented, no matter how weak." ' " ' " (*Ibid.*) " 'Instead, the jury must be instructed when there is evidence that "deserve[s] consideration by the jury, i.e., 'evidence from which a jury composed of reasonable [people] could have concluded' " that the specific facts supporting the instruction existed.' " (*Id.* at p. 824.) "[A]ssertions of instructional error are reviewed de novo." (*People v. Shaw* (2002) 97 Cal.App.4th 833, 838.)

Lenhart argues, as he did under his substantial evidence claim, that he accidentally crashed V.'s car. But as we explained, the intent required was not that he specifically intended to damage the car. Rather, what was required was that Lenhart intended to commit a wrongful act—i.e., evading law enforcement—that resulted in the damage. And as discussed, there is no evidence Lenhart's act of evading was an accident; indeed, he admitted it was not. There was no basis for an accident instruction, and the trial court thus properly refused to give one.

## IV. Section 654

Lenhart contends section 654 precludes punishment for both the evading conviction in count 2 and the vandalism conviction.[10] The People concede, and we agree.

Section 654 provides: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) " '[S]ection 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute

---

[10] Recall that the eight-month term imposed for the evading conviction in count 3 was stayed under section 654.

but nevertheless constituted an indivisible transaction. [Citation.] … [Citation.] If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*Kurtenbach, supra,* 204 Cal.App.4th at p. 1288, italics omitted.)

"A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence." (*People v. Brents* (2012) 53 Cal.4th 599, 618.) " 'The trial court has broad latitude in determining whether section 654, subdivision (a) applies in a given case.' " (*People v. Vasquez* (2020) 44 Cal.App.5th 732, 737.) Under this standard, this court must view the evidence in the light most favorable to the trial court's finding and presume the existence of every fact the trial court could reasonably deduce from the record. (*Id.* at p. 737; *People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113.)

Substantial evidence does not support the trial court's finding that the evading and vandalism involved separate objectives. The evidence shows that Lenhart's single objective was to evade police, and in the process he unintentionally crashed the car. Thus, both crimes were "incident to one objective." (*Kurtenbach, supra,* 204 Cal.App.4th at p. 1288.) No evidence supports a finding that Lenhart harbored one objective to evade police and a second objective to crash the car. Further, since the act of evading was the "wrongful act" that served as the basis for the vandalism conviction, the crimes constitute "but one act in the ordinary sense." (*Ibid.*) Thus, section 654 is implicated in two ways. Punishment on one of the counts must be stayed. The parties agree, as do we, that the matter must be remanded for a full resentencing under *People v. Buycks* (2018) 5 Cal.5th 857, 893.[11]

---

[11] Our decision on this issue moots Lenhart's other sentencing issue, which is that he his is entitled to a resentencing because the trial court did not understand that the low term was the presumptive term under newly enacted section 1170, subdivision (b)(6).

## DISPOSITION

The sentence is vacated and the matter is remanded for a full resentencing.  In all other respects, the judgment is affirmed.

SNAUFFER, J.

WE CONCUR:


HILL, P. J.


LEVY, J.